[Civ. No. 10116.  First Appellate District, Division One.—July 16, 1937.]

MINNA MEYER, Respondent, v. CITY OF SAN RAFAEL (a Municipal Corporation), Appellant.

Jordan L. Martinelli and Samuel W. Gardiner for Appellant.

George K. Ford and Natalie J. Holly for Respondent.

KNIGHT, J.—While walking along a concrete sidewalk on a public street in the City of San Rafael, plaintiff fell and fractured her wrist. Alleging that a broken panel in the sidewalk was the cause of her fall, she brought this action for damages against the city and the owners of the adjoining property. At the first trial the court directed a verdict in favor of the property owners; and the second, against the city alone, resulted in a verdict for plaintiff. From the judgment entered thereon the city appeals.

The accident happened on June 19, 1934, shortly before the noon hour, on the west side of D Street between First and Second Streets, and approximately twenty feet south of the southerly intersecting line of Second Street. The concrete walk was five feet wide, and the break extended across one of the panels. It was caused by an underlying root of a tree growing close to the outer edge of a five-foot parkway between the edge of the sidewalk and the street curb. The break in the panel started some five or six years before the accident, and at the time of the accident the edge of one side of the break tilted above the edge of the other side five-eighths of an inch at the inner line of the walk, and an inch and three-eighths at the outer line of the walk. At the time plaintiff fell she was not carrying anything; there were no obstructions of any kind on the sidewalk; and according to her testimony her eyesight, with the aid of the glasses she was wearing, "was one hundred percent perfect"; furthermore, she admitted having walked over the sidewalk many times during the six months she lived in that vicinity, and of knowing for some time of the existence of the broken concrete panel. The evidence also shows that although a number of pedestrians passed over the broken panel daily, no previous accidents were ever reported. One witness testified that some five or six years before the trial he stumbled over the crack, but did not fall. The circumstances under which he stumbled were not related, nor was the incident ever brought to the attention of the city employees.

Liability against the city is sought to be imposed under the authority of section two of the Public Liability Act of 1923 (Stats. 1923, p. 675; Deering's Gen. Laws, Act 5619), which provides that " . . . municipalities . . . shall be liable for injuries to persons and property resulting from the dangerous

or defective condition of public streets, highways, . . . in all cases where the . . . board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition . . . and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition''. ▮ As appears from the decisions in the cases hereinafter cited, the above statute constitutes a modification of the rule of nonliability of municipalities for acts performed in a governmental capacity, and consequently recovery thereunder is possible only where all the requirements conditioning the city's liability are supplied. It is not enough to show a dangerous condition of the property. The municipality must have had notice and have failed to exercise its opportunity to remedy the condition, the theory of the act being that liability is imposed not alone for the dangerous condition, but for the failure to remedy it, upon knowledge or notice thereof; and therefore the elements of knowledge or notice are logically essential to show culpability in failing to remedy the condition, and proof of one or the other is necessary to recovery. (*Nicholson* v. *City of Los Angeles,* 5 Cal. (2d) 361 [54 Pac. (2d) 725] ; *Watson* v. *City of Alameda,* 219 Cal. 331 [26 Pac. (2d) 286] ; *Crone* v. *City of El Cajon,* 133 Cal. App. 624 [24 Pac. (2d) 846] ; *Pittam* v. *City of Riverside,* 128 Cal. App. 57 [16 Pac. (2d) 768].)

The present action was based on allegations to the effect that on December 15, 1931, the superintendent of streets served notice in writing on the owners of the lot on the corner of D· and Second Streets to repair their sidewalk in the manner set forth in said notice, and that said repairs were not made. But at the second trial plaintiff expressly disclaimed any liability against the city growing out of said notice for the reason that it was proved at the first trial that said notice directed the repair of a sidewalk on Second Street, and had no reference whatever to the sidewalk on D Street where this accident occurred. ▮ Plaintiff contends, nevertheless, that the evidence adduced at the second trial is sufficient to charge the city with actual notice of the defect in question,

or if not, with constructive notice thereof. For the reasons hereinafter stated we are unable to sustain this contention.

The claim of actual notice is based on an item appearing in a report made in December, 1931, about two and a half years prior to the accident, by a city employee named McNamara to H. K. Brainerd, then superintendent of streets, covering an inspection made by McNamara of certain sidewalks in said city including those on both sides of D Street (which runs north and south) between First Street on the south and Second Street on the north. The item read *"NE Cor lot,* Broken tree panel." (Italics ours.) But the admitted fact is that the broken tree panel which plaintiff claims was the cause of her fall was on the west side of D Street, about twenty feet south of the north*west*erly corner of D and Second Streets; and as clearly established by· the map used at the trial, as well as by the testimony of Brainerd, who at the time of trial was the city manager, city engineer, and superintendent of streets, and was called as a witness by plaintiff and gave the only testimony bearing on said report, the item "NE Cor lot . . . " as it appeared in said report designated the lot on the *northeast* corner of D and *First* Streets, which was on the opposite (easterly) side of D Street and at the other end of the block from where the accident occurred.

Plaintiff's second contention that the city was charged with constructive notice is based on the argument that the defect had been in existence for a long time, that it was of a conspicuous, dangerous character, and that reasonable inspection by the city would have disclosed these facts to the city. This contention is completely disposed of by two recent decisions of the Supreme Court rendered in the cases of *Nicholson* v. *City of Los Angeles, supra,* and *Whiting* v. *City of National City,* 9 Cal. (2d) 163 [69 Pac. (2d) 990], the facts of which, and especially those of the latter case, are similar in all essential respects to those of the case now before us. The judgments therein against the municipalities were reversed after hearing and determination by the District Courts of Appeal of the Second and Fourth Districts respectively affirming such judgments. (*Nicholson* v. *City of Los Angeles* (Cal. App.) 48 Pac. (2d) 986; *Whiting* v. *City of National City,* (Cal. App.) 61 Pac. (2d) 504.) In the Nicholson case the break across the concrete panel was a trifle wider

than the one in the present case, and had been in existence
for several months; while in the Whiting case the break
was somewhat narrower than the one here, but had been in
existence for about six years; and the plaintiff in each case,
as here, contended that the defect was of a conspicuous and
dangerous character and that the existence thereof for a
considerable length of time created a presumption of con-
structive notice. In holding adversely to such contention the
Supreme Court in the Nicholson case went on to say that
constructive notice ordinarily involves as an essential element
actual notice of facts and circumstances which are sufficient
to put a prudent person on inquiry as to the existence of the
facts with respect to which he is charged with constructive
notice; that therefore, in order to charge a city with
constructive notice there must be some element of conspicu-
ousness or notoriety so as to put the city authorities upon
inquiry as to the existence of the defect or condition and its
dangerous character; furthermore that it was equally clear
that when the city is charged with constructive notice to
inspect, it must be made to appear that a reasonable inspec-
tion would have disclosed the defect or dangerous condition;
that is, had there been no neglect of duty there would have
been actual knowledge on the part of the city officers. And
in each of those cases it was held, as a matter of law, that
the defect in question was not of such a conspicuous or
dangerous character as would sustain a finding that had the
city fulfilled its duty of reasonable inspection and super-
intendence of the streets as a whole it would have had actual
notice of the break; and in so holding the court points out
that it is well settled that a municipality is not an insurer of
its public ways and is not bound to keep them so as to pre-
clude the possibility of injury or accident; that it is a matter
of common knowledge that no sidewalk is perfect, and that
a municipality cannot be expected to maintain the surface of
its sidewalks free from all irregularities and inequalities, and
from every possible obstruction to travel.

The decisions in those cases are clearly controlling in the
present situation. It must likewise be held here, therefore,
that the evidence relied on by plaintiff as proof of con-
structive notice is legally insufficient to support the judgment.

. With respect to the cases cited by plaintiff on this issue, it
may be said that most if not all of them, including *Hook* v.

*City of Sacramento,* 118 Cal. App. 547 [5 Pac. (2d) 643], are differentiated in the Nicholson case; consequently it is not necessary to review them here. One of the cases so cited, *Rodkey* v. *City of Escondido,* (Cal. App.) 60 Pac. (2d) 479, decided by the District Court of Appeal of the Fourth District, affirming the judgment against the municipality, was later taken over by the Supreme Court, and the judgment was reversed. (8 Cal. (2d) 685, 686 [67 Pac. (2d) 1053].)

For the reasons and upon the grounds above stated, it is ordered that the judgment herein be and the same is hereby reversed.

Tyler, P. J., and Cashin, J., concurred.