[Civ. No. 2696.   Fourth Dist.   Feb. 17, 1943.]

NELLIE HENDERSON et al., Appellants, v. PROGRESSIVE OPTICAL SYSTEM (Individual's Fictitious Name) et al., Defendants; E. W. LAISNE et al., Respondents.

John Preston King, Wild & Carlson and R. F. Maxwell for Appellants.

Chester O. Hansen and John Said for Respondents.

GRIFFIN, J.—This is an appeal by plaintiffs and appellants from a judgment of nonsuit entered against them and in favor of defendants and respondents E. L. Laisne, individually, and E. L. Laisne, transacting business under the firm name of "Progressive Optical System," E. W. Laisne, and Juanita Laisne. The complaint alleges that the *defendants were in control and possession of certain described office floors and appurtenances* on June 16, 1939, and on that day the plaintiff Nellie Henderson was in the office as an invitee (by the pleadings these facts are admitted); that the floors were for the use of persons lawfully in the premises; that the floor was so negligently cared for that it became slippery and dangerous; that the defendants, well knowing the premises, negligently left said floor in said slippery condition without guards or warning and that in consequence of said negligence and as a direct result thereof said plaintiff fell while properly and necessarily walking upon said floor. The complaint then sets forth the injuries sustained by the plaintiff and the resulting damages. The above-mentioned allegations were denied by the answer except it was admitted by the pleadings that the plaintiff Nellie Henderson slipped on the floor. It was alleged in this connection, however, that she was guilty of contributory negligence.

The evidence produced shows that appellants are husband and wife and that they resided in Lindsay, Tulare County, for over 35 years. The respondents are optometrists, maintaining upstairs offices over a store in Fresno. The respondents, on and prior to June 16, 1939, conducted an advertis-

ing campaign over the radio which the appellant Nellie Henderson heard. At that time she was wearing glasses which she thought needed examination and change. On that date, in response to the radio invitation, she traveled from Lindsay to respondents' offices in Fresno to have her glasses examined. She entered the offices a little before 11 a. m. It was the first time she had ever been there. Upon first entering the offices she talked to respondents' receptionist at a desk near the entrance door. She gave her name and address and waited at the side of the reception room until Dr. Laisne was at leisure. She was then taken into the examination room and her eyes were tested. Arrangements were made by her with the doctor for the purchase of glasses. Mrs. Henderson then went to a desk in an extension of the reception room where an employee of the respondents fitted her with bows for the glasses. She then commenced to walk leisurely across the reception room and when near the center of it her feet slipped out from under her and she fell. She claims that the fall was due solely to the condition of that part of the floor. The reception room floor was constructed of hardwood and had been very recently waxed. It was "highly polished." The floor was bare the full extent of the room and there were no rugs, runners nor other protection. Except for the floor wax, there were no foreign substances whatever on the floor and it was perfectly clean. The general area of the floor upon which Mrs. Henderson fell was "slippery" or "quite slick." She fell backwards and slightly to her left. The shoes worn by Mrs. Henderson were received in evidence. The evidence shows that such an excessive amount of wax had been placed on the area of the floor where the fall occurred that wax was peeled from the floor by her shoe; that part of it became attached, during the fall or immediately thereafter, to her left shoe on the left side thereof and across the heel and the back part of the shoe; that part of the wax that attached to the left side of the shoe was ground into the fabric of the shoe in one spot and shortly after the accident formed a central spot of wax "about the size of a dime" with "feathers of wax" extending therefrom. She testified that she had examined these shoes before the accident and no such spot was on them. She also testified that she had no warning from the general condition of the floor that this slippery area existed; that she had walked across

other parts of the floor prior to her fall and experienced no difficulty and noticed no excessively waxed areas.

Mrs. Henderson was severely injured by the fall, sustaining a fracture of her left hip. The damage sustained by her appears to be considerable. A Miss Dowell, who accompanied Mrs. Henderson to Fresno, later in the day called at the doctor's office to meet Mrs. Henderson. As she entered the reception room Mrs. Henderson started to walk toward her and suddenly her (Mrs. Henderson's) "feet slipped out from under her and she fell." As to the condition of the floor, Miss Dowell testified that as she looked across it she "could see it had a gloss or sheen. It was not just like a—just ordinary piece of wood or something like that. It had a gloss on it, quite a sheen, I would say."

Dr. Moore, called by Dr. Laisne to attend Mrs. Henderson, testified that when he arrived he could see that the floor in the reception room was "quite slick"; that just as he entered the reception room "I had taken a couple of steps. I slipped slightly"; that he did not know the place on the floor where Mrs. Henderson had fallen but that "it appeared to be a very recently waxed floor, even had the odor of fresh wax in the room"; that as he came to the head of the stairs one of the girls employed by respondents said: "Look out. This floor is very slippery"; that he was shown Mrs. Henderson's left shoe in the respondents' office the day of the accident and it was smeared with wax on its left side; and that he knew it was wax because he could smell it. This is about the substance of the testimony produced by appellants. Respondents claim that the court was fully justified in granting the non-suit upon this evidence.

A motion for nonsuit involves the legal effect of admitted facts. When made at the close of plaintiffs' case, it in purpose and effect operates as a demurrer to the evidence, and must therefore assume that all the evidence in favor of the plaintiff, if relevant to the issues, is true. On such a motion the court has nothing to do with the question of the credibility of the witnesses. The rules governing us in reviewing a judgment entered after granting a motion for nonsuit are clearly stated in *Bosqui* v. *City of San Bernardino,* 2 Cal. 2d 747 [43 P.2d 547]. We will not repeat them here. Therefore appellants' evidence, to be hereinafter discussed, is at all times to be considered in the light of these rules.

■ Mrs. Henderson was admittedly a business invitee at the time she slipped and fell. The duty owed her by the respondents was to keep the floors of their premises reasonably safe for those who must pass over them in the transaction of their business. (*Tuttle* v. *Crawford*, 8 Cal.2d 126, 130 [63 P.2d 1128].) Admittedly, the respondents were, at the time, in the *control* of the offices and of the floor which had been waxed by them. It may be reasonably inferred from the admissions and the evidence that the acts of the defendants created the floor's condition. (*Hatfield* v. *Levy Bros.*, 18 Cal.2d 798 [117 P.2d 841].) Whether it was a dangerous floor condition is the main question to determine from all the facts and circumstances and from the inferences that might reasonably be drawn from those facts. ■ Respondents argue that the burden was upon the appellants to show that respondents had either actual notice of the dangerous condition *or* that the condition complained of existed for so long a time that the respondents would be charged with notice of its existence, citing such cases as *Gold* v. *Arizona Realty etc. Co.*, 12 Cal. App.2d 676 [55 P.2d 1254] ; *Fuller* v. *Vista del Arroyo Hotel*, 42 Cal.App.2d 400 [108 P.2d 920] ; and *Rothschild* v. *Fourth & Market St. Realty Co.*, 139 Cal.App. 625 [34 P.2d 734]. In the cited cases the evidence did not show that the dangerous condition was created by the invitor or his agents. The principle there applied is not appliable here.

It was held in *Hatfield* v. *Levy Bros.*, *supra*, as it must be held here, that where there was an admission of joint *control* of the premises and floor in the building by the defendants, and where it was shown that the waxing of the floor was done in a negligent manner and was *the defendants' act*, and *the one creating the dangerous or defective condition*, it was not necessary for plaintiffs to prove by additional evidence that the defendants had notice or knowledge of the dangerous condition of the floor. Such knowledge is imputed. (See, also, *Sears, Roebuck & Co.* v. *Peterson*, 76 F.2d 243; *Tuttle* v. *Crawford*, *supra; Bury* v. *F. W. Woolworth Co.*, 129 Kan. 514 [283 P. 917].) The only additional element needed by appellants here to establish their cause of action, based on the negligence of the respondents in creating a dangerous floor condition, is that the respondents' act of waxing the floor in the manner in which it was waxed, did create a dangerous floor condition, causing Mrs. Henderson's injuries. It has been often said that the mere fact that someone falls on

a floor does not produce a reasonable inference that the floor is dangerous and that it is not negligence *per se* to have a *waxed* floor in an office. However, a floor may be so waxed as to make it slippery and dangerous. (*J. C. Penney Co.* v. *Robison,* 128 Ohio St. 626 [193 N.E. 401].)

The kinds of evidence which have been held sufficient in California to take this question of dangerous floor condition to the jury will now be considered, together with the evidence presented by the appellants on this subject. The evidence shows that Mrs. Henderson's fall was caused by her foot slipping on the waxed floor and it may be reasonably inferred that it was due to the presence of a surplus or excessive deposit of wax. The evidence also indicates that it had been "very recently waxed"; that there was the odor of fresh wax in the room. There is evidence that at the place where Mrs. Henderson slipped there must have been a surplus or excessive deposit of wax placed on the floor. She contended that there was, and that her foot scraped up a portion of it in the fall, leaving a spot of wax on her shoe "about the size of a dime." The evidence would support such a conclusion, and that such a condition was a dangerous one. *Tuttle* v. *Crawford, supra,* was a case where a woman stepped on a wet space of cement floor in a store, slipped and fell, and fractured her right femur. The wet spot was caused by the act of the employees of the store in freshening heads of lettuce by immersing them in water. The court held that whether the floor of the store was so negligently maintained as to render the person responsible for its condition liable in damages, was a question of fact to be decided by the jury. Many cases are there cited dealing with injuries resulting from falls caused by feet slipping on account of oil or grease or other substances which sometimes become deposited on floor spaces, or injuries inflicted because of improper floor conditions, and in each case they are held to be properly referable to juries for decision.

In *Sharpless* v. *Pantages,* 178 Cal. 122 [172 P. 384], the plaintiff fell in defendant's theatre due to the laying of a carpet in a loose condition. It was there held that since it was *defendant's act* that was complained of as *creating a dangerous floor condition, notice* was not involved in the case, and it was only necessary for plaintiff to show that defendant's act had created a dangerous floor condition causing

plaintiff's injury. The plaintiff proved that her foot slipped as she stepped upon the carpet. Defendant moved for a nonsuit and the motion was denied by the trial court. In passing on the motion for nonsuit the Supreme Court said: "the fact that the plaintiff's foot slipped as she stepped upon the carpet is some evidence tending to show that defendant had failed" to use ordinary care to maintain the carpet upon the steps in such condition that it would be safe for persons to pass thereon in an ordinary manner, "and it is sufficient to sustain the decision upon the motion for a nonsuit." (See, also, *Brown* v. *Holzwasser, Inc.*, 108 Cal.App. 483 [291 P. 661]; *Lorenz* v. *Santa Monica etc. District*, 51 Cal.App.2d 393 [124 P.2d 846].) *Hatfield* v. *Levy Bros., supra*, is factually similar to the instant case. There the defendant was charged with the negligent maintenance of the floor in its store. The invitee slipped on a floor that had been recently waxed by one of the employees. It was there said: "an excessive amount of wax would make the floor slippery. The evidence shows that a waxed floor is ordinarily not slippery unless an excessive quantity of wax is applied which does not occur unless the one applying the wax is 'very careless.' " We are impelled to hold, in view of the evidence in the instant case and the reasonable inferences that might be drawn therefrom, that the nonsuit was improperly granted.

Judgment reversed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied March 9, 1943.