[Civ. No. 4368.  Fourth Dist.  Mar. 26, 1952.]

LEONA CAGLE, Respondent, v. BAKERSFIELD MED-
ICAL GROUP (a Copartnership) et al., Appellants.

Johnston, Baker & Palmer for Appellants.

Roland S. Woodruff for Respondent.

GRIFFIN, J.—By a jury verdict, plaintiff and respondent was awarded a judgment against defendants and appellants for $3,000, for injuries she received on March 16, 1949, from a fall by slipping on the waxed asphalt tile floor of the reception hall in new medical offices opened by defendant doctors (doing business as Bakersfield Medical Group, a copartnership) a few weeks before the accident. The court denied a motion for nonsuit, as well as a motion for new trial. The sole question involved is the sufficiency of the evidence to support the verdict in respect to the claimed negligence of defendants in maintaining the floors of the reception room.

Plaintiff was an elderly woman who had been a patient of defendant Dr. Stoops for a number of years. She had previously received treatment at the new offices on two or three occasions and, according to her testimony, she noticed, on each occasion, that the concrete floor was covered with a gray marbleized tile; that it looked lovely; that it was "very highly polished, slick looking"; that she "commented on it when it was brand new"; that although she did not look for it she did not notice any dirt or foreign substance on the floor at the time of the accident; that on this particular occasion she and her husband were seated in the reception room awaiting their turn to see a doctor; that when her name was announced they both got up and went in a normal walk to meet the nurse; that plaintiff then turned to go down the hallway to an office; that shortly thereafter "both feet went out from under" her; that her feet "slipped" and she "went backwards," fell on her back and left side, and broke her arm at the elbow; that an operation was necessary to reset it; that it did not heal properly and resulted in a permanent partial loss of its mobility; that she was wearing laced medical walking leather-heeled shoes, "hygiene type"—"not new" at the time; that after walking around to the X-ray offices of other doctors and to her own car, and after arriving at her home, she examined her shoes but saw nothing on them in the form of any foreign substance; that after her return from the hospital she again visited defendants' offices, and to her, the condition of the floor looked different, "it doesn't look as slick," i.e., "doesn't look like it has as high a gloss polish on it" or as "slippery." Plaintiff's husband testified that the tile looked "slick and shiny" and that plaintiff's feet "slipped out from under her"

and that he made no examination of the floor at the particular spot where she fell.

Plaintiff called as her witness the janitor for defendant partnership. He testified he operated a janitor service and that as a part of his duties defendant company paid him $150 per month to "keep the office clean"; that he cleaned it every night except Friday nights; that he furnished his own material and equipment; that he started to work at the new offices when they opened them up about February 1, 1949; that the floor consisted of a factory waxed tile; that his procedure in caring for the tile floor was to sweep it, then mop it with cold water and when dry apply wax with a wool mop; that about one quart of wax to 800 square feet was used and then he would go over it with a buffing machine and if "there was any loose particles, I got them, I swept again, but ordinarily there wasn't" (any loose particles); that at first he applied a brown label wax and about two weeks before the accident he changed to a simonize ·type of wax; that they were the same type (water base) and would not skid; that this wax was made especially for that type of floor; that he followed the directions given on the con-- tainer as to its application; that if it would ever skid it would skid immediately after the wax was applied and would become less apt to skid as it wore down by foot traffic; that it was his custom to repeat this cleaning and waxing process every two weeks and that he believed he waxed it just 10 days before this accident occurred, although he ran the polisher over it every week or so; that in his opinion the floor never did look any different than it did at the time of the accident.

Plaintiff called a witness, experienced in the floor covering business, who testified about the use of water base liquid wax, that asphalt tile usually comes from the factory with a coat of such wax; that when applied to light, as distinguished from dark colored tile, it would require a good deal more wax to accomplish the same polish or sheen with light colored tile; that the pores of the tile absorb the wax; that to accomplish the sheen on the floor there must be a film of wax over it; that it is the quantity of wax applied that makes the floor slippery; that if not evenly applied it may be slippery in one place and not in another; that if a floor is slippery it means that the wax was improperly applied, i.e., "too much wax" in one spot; that after 10 days of wear in a well-traversed traffic lane one would not expect to find

a slippery floor; that the simonize wax is a standard one and is customarily used in the community; that if the directions are followed in its application it does not tend to be slippery; that the use of the term ''non-slip,'' when applied to it, is purely an advertising slogan. Another expert testified that simonize wax is not considered as ''non-skid''; that there is no such thing as a nonslippery wax.

Defendants produced a witness who laid the tile for defendant partnership. He testified that in his opinion a buffer would remove all surplus wax that might be applied; that if the wax was applied according to directions a buffed floor would not be slippery; and that whether the tile was light or dark would make no difference.

The nurse testified that the floors were all ''highly polished'' and that they had been buffed that week end.

It is defendants' contention that since the evidence shows, without contradiction, that the new floor was waxed when it came from the factory, was laid and subsequently waxed in accordance with the custom of the community, with the customary and best type of wax, that since it was waxed about 10 days before, and buffed about four days before plaintiff fell, was clean and in well-kept condition at that time, and since plaintiff was well acquainted with its condition and no foreign substance was found thereabouts or on plaintiff's shoes, no negligence on the part of defendants was shown.

It is further argued that since the janitor was an independent contractor defendants would not be liable for any claimed negligence on his part; that since there was no evidence that defendants knew of or could have known of any condition that would cause the accident at any time before the accident happened, no liability could be attached to them; that negligence is never presumed, and since the burden of proof was upon plaintiff to prove its existence, the evidence falls short of showing any liability on the part of these defendants for plaintiff's injury. In support thereof they cite such cases as *Harpke* v. *Lankershim Estates*, 103 Cal.App.2d 143 [229 P.2d 380] ; *Owen* v. *Beauchamp*, 66 Cal. App.2d 750 [152 P.2d 756] ; and *Vaughn* v. *Montgomery Ward Co.*, 95 Cal.App.2d 553, 557 [213 P.2d 417].

The Harpke case involved a fall on a marble stairway where plaintiff lost her balance and where she had no knowledge as to the cause of the fall. The court held that no negligence was presumed merely because of the fact of the injury from

the fall; that in the absence of proof of some foreign substance on the floor or proof of a dangerous condition created by or known to the defendant, plaintiff could not recover. The Owen case turned on the question of knowledge of a piece of dental wax found on plaintiff's shoe after she fell on the floor. The Vaughn case is somewhat parallel to the instant case, but the appellate court there said that there was no evidence that the floor was "slippery" and no evidence that there was any excess wax on the floor.

Plaintiff relies principally upon *Tuttle* v. *Crawford,* 8 Cal. 2d 126, 130 [63 P.2d 1128], where it is said:

" 'It is the rule in California that the keeper of a public place of business is bound to keep his premises and the passageways to and from it in safe condition, and must use ordinary care to avoid accidents or injury to those properly entering upon his premises on business.' "

In *Nicola* v. *Pacific Gas & Elec. Co.,* 50 Cal.App.2d 612, 615-616 [123 P.2d 529], it is said:

"If wax or, as in the present case, both wax and soft soap, are applied to the floor, it must be in such manner as to afford reasonably safe conditions for the proprietor's invitees, and if such compounds cannot be used on a particular type of floor material without violation of the duty to exercise ordinary care for the safety of invitees, by reason of the dangerous conditions they create, they should not be used at all. Of course slipperiness is an elastic term. From the fact that a floor is slippery it does not necessarily result that it is dangerous to walk upon. It is the degree of slipperiness that determines whether the condition is reasonably safe. This is a question of fact."

From the decision in that case it might be held that under proper circumstances, considering the type of floor and the type of patrons using the floor, a jury might well find that the application of any wax at all might be a violation of the duty to use ordinary prudence and caution to avoid injury. (See, also, *Means* v. *Southern Calif. Ry. Co.,* 144 Cal. 473 [77 P. 1001]; *Rothschild* v. *Fourth & Market St. Realty Co.,* 139 Cal.App. 625 [34 P.2d 734]; *Williamson* v. *Hardy,* 47 Cal.App. 377 [190 P. 646].)

The facts here related are quite similar to the facts set forth in *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798 [117 P.2d 841]. The law there applied, without repeating it here, is quite applicable to the instant case. (See, also, *Davis* v. *Duncan,* 44 Cal.App.2d 280 [112 P.2d 300].)

In *Henderson* v. *Progressive Optical System*, 57 Cal.App.2d 180 [134 P.2d 807], this court reversed a judgment of nonsuit in an action involving a plaintiff who slipped on an excessive deposit of wax on a slippery waxed floor in the office of an optometrist. We there held that in an action for injuries sustained through a fall on a slippery floor, where there is an admission of joint control of the premises and floor by defendants, and where it is shown that the waxing of the floor was done in a negligent manner and was the defendants' act, and the one creating the dangerous or defective condition, it is not necessary for plaintiffs to prove by additional evidence that defendants had notice or knowledge of the dangerous condition. Such knowledge is imputed. It should be noted that the complaint in the instant action alleges that these defendants negligently kept and maintained the floor of their premises so as to cause it to be in a slippery and unsafe condition. They did own and maintain the offices and floor involved. The only contention involves the manner in which they were maintained. ■ The fact that defendants employed a janitor at $150 per month to perform this service for them would not materially alter the rule as to ordinary care set forth in the quotation from *Tuttle* v. *Crawford, supra.*

In the Henderson case several of the cases cited by defendant are discussed and distinguished. In reviewing many decisions rendered in this state in actions of this character involving slippery floors, there appears to be present in some of those cases evidence of prior falls by other people on the same floor. In the Rothschild case, *supra,* it is stated that where there is testimony as to the conditions previous to the accident by persons who had also slipped on the same floor, such testimony is evidence tending to show notice to the defendant of the dangerous condition. ■ In this case there is no such evidence of previous accidents but there is proof of the existence of the highly polished and possible slippery condition of the floor for a period of at least six weeks, and such evidence might support an inference of notice or at least be sufficient to place the question of notice in the hands of the jury.

■ Although defendants insist that the floor was not waxed later than 10 days prior to the accident, there is evidence that wax was applied to the floor once every two weeks commencing with the first day of February, and using this two-week interval period the jury might have con-

cluded, as contended by plaintiff, that the last waxing date would have fallen about two or three days prior to the time of the accident. A new simonize wax purchase was made by the janitor service just a day or so previous to the accident, which might also indicate that the new wax was applied about the time of the accident.

If we assume the existence of the facts and inferences most favorable to the plaintiff, we must conclude that the jury believed that the plaintiff, while walking in an ordinary and prudent manner, slipped and fell on a highly polished, slick and slippery floor which had been maintained in a slippery condition by the defendants over a period of several weeks by the application of an excessive amount of wax to the floor. There being substantial evidence of these facts in the record, the question was for the jury alone to decide whether defendants were negligent, and whether or not defendants had notice of such condition.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 22, 1952.