[L. A. No. 22543.   In Bank.   May 19, 1953.]

MARY E. BARRETT, Respondent, v. THE CITY OF CLAREMONT, Appellant.

Moss, Lyon & Dunn, Sidney A. Moss and Henry F. Walker for Appellant.

Knight, Gitelson, Ashton & Hagenbaugh, Van Hagenbaugh and Leon J. Alexander for Respondent.

EDMONDS, J.—Mary E. Barrett sued the city of Claremont for damages, charging the defendant with negligence in the construction and maintenance of a public sidewalk. The injuries which she sustained resulted from a fall occurring when she tripped upon a ridge of asphaltum filler material protruding above the surface of the walk. Whether that defect was a trivial or substantial one is the principal question presented upon the appeal from the judgment against the city.

In 1938, the city constructed a sidewalk, approximately 10 feet wide, consisting of concrete slabs about 4 inches thick. A space of ½ inch, extending the entire width of the walk, was left between the slabs to accommodate changes in temperature. Although standard building practice called for filling such space with asphaltum to a height of ¼ to ½ inch below the top of contiguous slabs, the filler in the joint in question was made level with the surface of the sidewalk.

The black filler material readily absorbs the rays of the sun. On warm days, its internal temperature may rise to a point greatly above that of the surrounding air, causing the material

to become soft. Warm weather also expands the concrete slabs, pushing the filler material up and out of the joint. People using the sidewalk step upon the small ridge created and spread the material over the sidewalk's surface. As a result of this process, sufficient asphaltum had been expelled from the joint upon which Miss Barrett tripped to create a ridge about 5 inches wide. At the center, its highest point, the ridge was about ½ inch above the surface of the sidewalk and tapered gradually on each side to the level of the walk.

The accident occurred in the afternoon of a warm day in June. Because of a crust of dirt and other substances, the surface of the ridge appeared to be normal but the center was soft. Miss Barrett, while walking along the sidewalk, caught her toe upon the strip and fell.

The present action was commenced pursuant to the provisions of the Public Liability Act of 1923 (Stats. 1923, p. 675; 2 Deering's Gen. Laws, Act 5619; now Gov. Code, §§ 53050-53056). Her complaint alleged that she had suffered an injury as a result of a dangerous and defective condition of the sidewalk and that the defendant city had notice of such condition but failed to remedy it. By its answer, the city denied generally the allegations of the complaint and pleaded affirmatively the defense of contributory negligence.

A jury awarded Miss Barrett damages. Motions by the city for a directed verdict, for judgment notwithstanding the verdict, and for a new trial were denied. The appeal is from the judgment entered upon the verdict.

The city takes the position that, as a matter of law, the defect must be deemed to have been a minor or trivial one. Another contention is that the trial court improperly rejected an offer of proof that the records of the city between 1940 and 1948 would disclose that, with the exception of the claim of Miss Barrett, no report had been made of an accident having occurred at that joint or at any other joint in the streets of the city.

The Public Liability Act of 1923 provides that a municipality shall be liable for injuries resulting from a dangerous or defective condition of the public streets in all cases where having notice or knowledge of the condition those persons having authority to remedy it fail, within a reasonable time, to do so. ▮ Elements essential to a recovery under this statute include proof that a dangerous condition existed and that the municipality had notice or knowledge of it. (*Nicholson* v. *City of Los Angeles,* 5 Cal.2d 361, 363 [54 P.2d 725].)

█ A determination of whether the defect involved is a minor or trivial one may be material to the establishment of each of these requirements. Growing out of the difficulty of maintaining heavily traveled surfaces in perfect condition is the practical recognition that minor defects inevitably occur, both in construction and maintenance, and that their continued existence is not unreasonable. In such case, irrespective of the question of notice of the condition, no liability may result. (*Graves* v. *Roman*, 113 Cal.App.2d 584, 586-587 [248 P.2d 508]; *Robson* v. *Union Pac. R. R. Co.*, 70 Cal.App.2d 759, 761-762 [161 P.2d 821]; *Clarke* v. *Foster's Inc.*, 51 Cal. App.2d 411, 414 [125 P.2d 60]; *Sischo* v. *City of Los Banos*, 37 Cal.App.2d 717, 718 [100 P.2d 305].)

█ The same problem may arise in connection with the question of notice. In many instances, the plaintiff cannot show actual notice of the condition and must rely upon the constructive notice imputed to the municipality by the passage of time. (*Hook* v. *City of Sacramento*, 118 Cal.App. 547, 553 [5 P.2d 643]; *Dawson* v. *Tulare Union High Sch.*, 98 Cal. App. 138, 142 [276 P. 424].) The theory of those decisions is that the city, had it performed its duty of conducting a reasonable inspection, would have had actual knowledge of the existence of a dangerous defect. (See *Nicholson* v. *City of Los Angeles, supra,* pp. 364-365.) If the defect is of such trivial character that it presents no element of conspicuousness or notoriety, its continued existence does not impart constructive notice to the municipality. (*Whiting* v. *City of National City,* 9 Cal.2d 163, 166 [69 P.2d 990]; *Nicholson* v. *City of Los Angeles, supra,* pp. 367-368; *Balmer* v. *City of Beverly Hills,* 22 Cal.App.2d 529, 531 [71 P.2d 854].)

The plaintiff contends that, in any event, the question of whether the defect was trivial or substantial is one of fact, which the jury has resolved in her favor. █ But, as was said in *Whiting* v. *City of National City, supra,* "[i]t is a matter of common knowledge that it is impossible to maintain a sidewalk in a perfect condition. Minor defects are bound to exist. █ A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to travel. Minor defects due to continued use, or action of the elements, or other cause, will not necessarily make the city liable for injuries caused thereby. What constitutes a minor defect is not always a mere question of fact. If the rule were otherwise the city could be held liable upon a showing of a trivial defect." (P. 165.)

Miss Barrett argues that the physical properties of the asphaltum filler material distinguish the present case from those involving trivial defects. In this connection, she relies upon *Louie* v. *Hagstrom's Food Stores, Inc.*, 81 Cal.App.2d 601 [184 P.2d 708], affirming an award of damages for injury caused by slipping upon a puddle of syrup on the floor of a grocery store. To bring herself within the rule of that case, she characterizes the ridge of asphaltum as a ''sticky puddle.''

■ The evidence most favorable to Miss Barrett shows only that the asphaltum filler may become soft and sticky on warm days. It does not support an inference that she slipped upon the substance. Her answer to the direct inquiry of whether she had a sensation of slipping was in the negative. She stated that, as she stepped upon the ridge in such manner as to place her full weight upon her right foot, the tip of her toe ''caught'' or ''stuck'' in the substance, retarding her forward motion and throwing her off balance.

■ The record does not show that the small amount of asphaltum above the level of the sidewalk presented any greater danger of injury than that disclosed in other trivial defect cases. The accident occurred on one of the busiest streets of the city. Miss Barrett had traveled it many times. At its highest point, the ridge was only ½ inch above the surface of the sidewalk. Moreover, it did not rise sharply to that height but curved gradually upward from each edge toward the center, much in the same manner as a common doorsill. Many decisions hold that defects of a greater magnitude than that shown here are minor ones. (*Whiting* v. *City of National City, supra* [adjoining sidewalk panels differing in elevation ¾ inch at the highest point]; *Nicholson* v. *City of Los Angeles, supra* [1½ inches difference in elevation]; *Sischo* v. *City of Los Banos, supra* [grade in sidewalk of 58/100 inch per foot]; *Balmer* v. *City of Beverly Hills, supra* [1 inch difference in elevation of sidewalk panels]; *Dunn* v. *Wagner*, 22 Cal.App.2d 51, 54 [70 P.2d 498] [1 inch rise in sidewalk]; *Meyer* v. *City of San Rafael*, 22 Cal.App.2d 46, 50 [70 P.2d 533] [adjoining sidewalk panels varying from ⅝ inch to 1⅜ inches in height].) Accordingly, the defect here concerned must be deemed to have been one within that category.

In the cases relied upon by the respondent which hold that the question of negligence is one of fact, either different circumstances were shown by the record or the question as to what constitutes a trivial defect was not discussed. (*Fackrell*

v. *City of San Diego,* 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625] [pothole in sidewalk from 5 inches to 2 feet deep]; *Anderson* v. *County of Joaquin,* 110 Cal.App.2d 703 [244 P.2d 75] [chuckhole 2 to 6 inches deep]; *Murphy* v. *County of Lake,* 106 Cal.App.2d 61 [234 P.2d 712] [question of whether or not defect was a minor one not raised]; *Warren* v. *City of Los Angeles,* 91 Cal.App.2d 678 [205 P.2d 719] [hole 2 inches deep, 10 inches square, containing oil and grease]; *Owen* v. *City of Los Angeles,* 82 Cal.App.2d 933 [187 P.2d 860] [hole 9-11 inches long, 4-6 inches wide, and 2-3½ inches deep]; *Louie* v. *Hagstrom's Food Stores, supra* [puddle of syrup on floor, 6 to 8 inches wide]; *Maddern* v. *City & County of San Francisco,* 74 Cal.App.2d 742 [169 P.2d 425] [depression in street 65 to 80 feet long, 10 to 12 feet wide, and 8 to 10 feet deep]; *Sheldon* v. *City of Los Angeles,* 55 Cal.App.2d 690 [131 P.2d 874] [depression in sidewalk 1½ inches deep]; *Balkwill* v. *City of Stockton,* 50 Cal.App.2d 661 [123 P.2d 596] [hole in sidewalk 5 inches long, 2 inches wide, and 2 inches deep]; *Allen* v. *City of Los Angeles,* 43 Cal.App.2d 65 [110 P.2d 75] [bridge raised 2 inches above sidewalk]; *Ackers* v. *City of Los Angeles,* 40 Cal. App.2d 50 [104 P.2d 399] [hole in sidewalk 12 inches long, 3 inches wide, and 2 inches deep]; *Hook* v. *City of Sacramento, supra* [hole 2 feet long, 18 inches wide, and 1½ inches deep].) *Barrett* v. *City of Sacramento,* 128 Cal.App. 708 [18 P.2d 356], decided prior to the Nicholson and Whiting cases, is not in harmony with those decisions and is disapproved.

From the minor nature of the defect here concerned it must be concluded, as a matter of law, that no injury would be sustained by one exercising reasonable care in the use of the sidewalk. Accordingly, a finding of negligence on the part of the city is without support in the evidence.

The judgment is reversed with directions to the trial court to grant the defendant's motion for judgment notwithstanding the verdict.

Gibson, C. J., Shenk, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

This case presents a factual situation which is resolved as a matter of law by the majority, in spite of the finding by the jury and the trial court on denial of a motion for a new

trial, and a determination by the unanimous decision of the District Court of Appeal. I adopt the decision of the District Court of Appeal affirming the judgment on the verdict as ably disposing of the case. (*Barrett* v. *City of Claremont*, (Cal.App.) 247 P.2d 113.)

There is no doubt that, under the public liability law (Gov. Code, § 53050 et seq.), in order for the city to be liable, there must be a dangerous or defective condition and the city must have either actual or constructive knowledge thereof. The majority opinion discusses both of those features but apparently rests its decision on but one, namely, lack of a dangerous or defective condition, and hence, no negligence, because the defect was trivial. More will be said concerning that issue later.

Both of those issues are determinable, and were properly determined, by the trier of fact. We said in *Fackrell* v. *City of San Diego,* 26 Cal.2d 196, 206 [157 P.2d 625, 158 A.L.R. 625] : "Whether a given set of circumstances creates a dangerous or defective condition is primarily a question of fact." The test as to whether it becomes a question of law is stated in *Owen* v. *City of Los Angeles,* 82 Cal.App.2d 933, 938 [187 P.2d 860] : ". . . *whether a condition is defective or dangerous is one which calls for the application of the rule that where there is room for difference of opinion among reasonable minds, the question is one of fact."* (Emphasis added.) Here, the jury, the learned trial judge and three able justices of the District Court of Appeal—*all possessing reasonable minds*—concluded that reasonable minds could conclude that the defect was dangerous. The principle is cogently stated in *Stone* v. *New York C. & St. L. R. Co.,* 344 U.S. 407 [73 S.Ct. 358, 97 L.Ed. 441, 445], where the court was dealing with the question of negligence. While there were three dissenters, they did not disagree with the principle here involved. The court said : "The standard of liability is negligence. . . . To us it appears to be a debatable issue *on which fair-minded men would differ. . . . Those circumstances were for the trier of facts to appraise."* (Emphasis added.) Applying those rules to the instant case compels the conclusion that reasonable minds—"fair-minded men"—could conclude that the defect was a dangerous one.

In fact, the soft tarry substance became not only a dangerous condition by its protuberance above the sidewalk but was a trap for the unwary. It would look substantial to a pedestrian but, being soft and sticky, the pedestrian would, as

plaintiff did here, unknowingly step on it and her foot would sink in. There was sufficient cohesive quality to cause her foot to stick, at least momentarily. That was enough to throw her off her stride and result in an imbalance and fall. Certainly, reasonable men could call such a condition dangerous and defective.

In the foregoing discussion, I have accepted the facts as stated by the majority as complete,—that is, that there was a 1/2-inch high asphalt hump across the sidewalk which arose by reason of that substance being placed between the slabs of concrete in a crevice left therefor to accommodate the expansion and contraction; that the common standard practice is to install the asphalt in the crevice to a point 1/2 inch *below* the surface of the sidewalk. That was *not* done here; the city caused the asphalt to be *flush* with the sidewalk surface. Thus it definitely appears that the sidewalk was negligently constructed from the beginning, *being contrary to the standard practice*. Deviation from custom or standard practice may constitute negligence (19 Cal.Jur. 581-583). The jury could have so found here. The evidence shows that it is the tendency of asphalt to work upward and out of a crevice and not return. That is what happened here to the extent of 1/2 inch. If it had been properly installed it would have worked upward only to the surface of the sidewalk. We have, therefore, negligence in the installation of the asphalt and it necessarily follows that the city knew of it because it made that installation itself.

There is even more evidence of knowledge. The city's superintendent of streets testified that the condition of the asphalt in and on this sidewalk had *been the same since 1940*. Thus the city had double actual knowledge of the defective condition.

Under the foregoing circumstances, there is no room for the application of the "trivial" defect exception to liability because, if it were applied, the city would escape liability where it knowingly created and maintained a dangerous defect as long as it was small. Indeed, it could create as many and as dangerous pitfalls as it wished and be subject to no liability when it kept them unobstrusive. No such strained construction of the public liability act should be indulged.

The trivial defect rule is court-made, as the statute makes no distinction between dangerous or defective conditions according to their magnitude, and in most of the cases, it has been relied upon to hold that there *could not be constructive notice where the defect was minor* (see *Nicholson* v. *City of*

*Los Angeles,* 5 Cal.2d 361 [54 P.2d 725]). In this case, as above demonstrated, the city had *actual notice*—the facts conclusively establish it. Therefore, the rule of the Nicholson case is not applicable here.

As to its applicability on the question of whether the condition is dangerous or defective, we also have direct evidence, as seen from the foregoing, that the condition *was defective and fraught with danger.* The majority seeks to escape the result of that evidence by stating that there are cases which hold that a defect may be so trivial that it does not constitute a dangerous condition. In *none* of those cases, however, was the defect actually known or created by the defendant, and for that reason, it was held that defendant need not anticipate an injury arising from it. The basic case that the majority relies upon is *Whiting v. City of National City,* 9 Cal.2d 163 [69 P.2d 990], which was concerned *solely with the question of notice,* rather than whether a defect may be so trivial as to constitute no hazard. Where, as here, the city had actual knowledge of the defect and knew that the construction was contrary to standard practice, there is no basis whatsoever for saying that it could not anticipate an injury. No question is presented as to whether the city, as a responsible person, *should* have anticipated the injury, because, in view of its knowledge it must have expected it.

Moreover, it is firmly established that a dangerous or defective condition may be the basis for liability by the use of a general plan of operation of city operated property as well as by a structural defect. (*George v. City of Los Angeles,* 11 Cal.2d 303 [79 P.2d 723]; *Bauman v. San Francisco,* 42 Cal.App.2d 144 [108 P.2d 989]; *Wexler v. City of Los Angeles,* 110 Cal.App.2d 740 [243 P.2d 868].) That situation is presented here because the method of construction of the sidewalk was contrary to the accepted standard.

Finally, there is a basis for the jury's verdict which is not mentioned in the majority opinion. There was a strip of asphalt on the sidewalk. It is a tarry substance which, on warm days, becomes soft and sticky. The accident occurred on a warm day. The surface of the asphalt appeared gray in color, concealing its lack of firmness and adhesive character. The city knew all of those things yet permitted the condition to exist. Plaintiff stepped on this asphalt and the toe of her shoe momentarily adhered to the asphalt, retarding the forward motion of her foot, thus throwing her off balance and into a fall. That makes out a case of negligence against

defendant. It is indistinguishable from the slippery floor cases where wax has been applied to the floor. There the injured person slips and falls. Here, one foot is retarded for sufficient time to destroy her balance and a fall results. It is settled that where a floor is made slippery by the application of wax, the possessor of the property is liable for injury to a business visitor who slips and falls on the floor. (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798 [117 P.2d 841]; *Lorenz* v. *Santa Monica etc. Sch. Dist.,* 51 Cal.App.2d 393 [124 P.2d 846]; *Nicola* v. *Pacific G. & E. Co.,* 50 Cal. App.2d 612 [123 P.2d 529]; *Williamson* v. *Hardy,* 47 Cal.App. 377 [190 P. 646]; *Lamb* v. *Purity Stores, Inc.,* 119 Cal.App. 690 [7 P.2d 197]; *Brinkworth* v. *Sam Seelig Co.,* 51 Cal.App. 668 [197 P. 427]; *Brown* v. *Holzwasser, Inc.,* 108 Cal.App. 483 [291 P. 661]; *Henderson* v. *Progressive etc. System,* 57 Cal.App.2d 180 [134 P.2d 807]; *Cagle* v. *Bakersfield Medical Group,* 110 Cal. App.2d 77 [241 P.2d 1013].) Those cases also hold that whether maintenance of the slippery floor is negligence is for the trier of fact. If the maintenance of a slippery condition is negligence so is the maintenance of a sticky surface as either condition may cause injury.

The majority enunciates no rule, fixes no standard, establishes no basis for determining what condition constitutes a trivial defect for which there is no liability, or for the determination of what is a dangerous and defective condition for which liability may be imposed. The trier of fact—the jury or trial judge—is required to speculate as to what four members of this court may ultimately conceive to be a dangerous and defective condition within the purview of the public liability statute. Even though the jury and trial judge may have viewed the premises, the result would be the same. Without some standard for the determination of what constitutes a dangerous and defective condition, there is nothing to guide the trial court and jury in any case.

The traditional rule that, where the factual situation is such that reasonable minds might differ, the issue is one of fact, is ignored by the majority. It must necessarily ignore this rule, because to apply it in the case at bar, would require the majority to say that the jury, the trial judge and the three justices of the District Court of Appeal who ruled in favor of plaintiff, did not have reasonable minds. To avoid this absurd holding, the majority predicates its decision on its own concept of what is a dangerous and defective condition, and holds that notwithstanding the finding of the jury, the trial

judge and the unanimous decision of the District Court of Appeal, the defect here proven did not constitute a dangerous and defective condition even though plaintiff suffered a serious injury as a result of such defect. In other words, the only standard is what the majority of this court fixes in each individual case. This is not announcing a rule of law—it is a rule of four men—who may be for the time being, men who have a preconceived notion in cases such as this, and who are disposed to usurp the function of the jury and trial judge in a grasp for power—power denied them by the Constitution and laws of this state. Because the Constitution and laws of this state guarantee to litigants in a case such as this, the right to trial by jury, which means that factual issues are to be determined by the jury. Those factual issues were so determined, and in view of the ruling of the trial court in denying a motion for a new trial and the decision of the District Court of Appeal affirming that ruling, that determination should be final.

As I have heretofore pointed out, this court is presented with numerous propositions of law of tremendous importance to the people of this state, the determination of which would consume all of the time available to the members of this court, without undertaking to review and redecide issues of fact, and I again state that cases such as this, involving only issues of fact, and which were correctly decided by the trial court and the District Court of Appeal, should not have been taken over and redecided by this court.

I would, therefore, affirm the judgment.

Respondent's petition for a rehearing was denied June 11, 1953. Carter, J., was of the opinion that the petition should be granted.