Filed 8/27/20  Rosenthal v. City of Oakland CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MELVYN ROSENTHAL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OAKLAND et al.,<br><br>    Defendants and Respondents. | A156881<br><br>(Alameda County Super. Ct. No. RG16840649) |

Melvyn Rosenthal filed a personal injury complaint in a trip-and-fall case against Street 41, LLC (Street 41) and the City of Oakland (the City), seeking damages for a severe shoulder injury sustained when he fell on a public sidewalk.  He sued Street 41 on a premises liability theory and the City for creating a dangerous condition of public property.  The trial court granted summary judgment for both defendants, concluding that the alleged cause of Rosenthal's fall—some unevenness in the sidewalk where four paving stones intersect—does not give rise to liability under the trivial defect doctrine as a matter of law.  After independently reviewing the record, we affirm.

1

# I. BACKGROUND

## A. *The Complaint*

On a clear and dry afternoon in December 2015, 77-year-old Melvyn Rosenthal was walking along the sidewalk in front of 250 41st Street in Oakland, following a route he had taken regularly for decades. He tripped on some unevenness in the sidewalk, pitching to the ground face forward and fracturing his right shoulder. Some months later he filed a complaint seeking damages from Street 41 for premises liability and from the City for public entity liability pursuant to Government Code sections 835 and 835.2.[1]

Rosenthal claimed he tripped on a crack in the sidewalk where two paving stones abut one another at an intersection of four paving stones, creating a vertical offset; that this offset in the paving stones meets the criteria for moderate damage according to the City's Sidewalk Repair Program; and that the defect is a dangerous condition the City was obligated to inspect and repair. He also alleged that Street 41, as the owner of adjacent property, had actual and constructive notice of the sidewalk defect and was negligent in failing to repair it.

## B. *The Summary Judgment Ruling*

In separate motions, the City and Street 41 moved for summary judgment. Each motion argued that the defect Rosenthal claims caused his fall is trivial and insubstantial as a matter of law and thus cannot give rise to liability. Street 41 argued, in addition, that as a private owner of adjacent property it owed Rosenthal no duty of care to maintain a public sidewalk.

---

[1] The complaint named a second private party defendant, Duck's Nest Preschool, which is a tenant of Street 41's property. Duck's Nest was dismissed without prejudice prior to the granting of the summary judgment motions that led to dismissal of the case against the remaining defendants, and is not a party to this appeal.

The trial court granted both motions, agreeing that "a reasonable jury [could not] find that the [alleged sidewalk defect] presented a substantial risk of injury," and the area of the sidewalk where Rosenthal fell "was not in a dangerous condition as a matter of law."

In granting summary judgment on the issue of trivial defect for both the City and Street 41, the court relied on expert testimony from the City's accident reconstructionist, Lonnie Haughton, who opined that the size of the vertical offset was approximately one-quarter inch high. But the court did not rely solely on the fact that, as measured, the alleged vertical offset was small. It also took into account Rosenthal's admission that he was not looking at the sidewalk surface while walking, together with the overall circumstances of what happened, including the fact that the accident "occurred during the day with no conditions affecting [Rosenthal's] ability to see the crack in the sidewalk."

Rosenthal's summary judgment opposition relied heavily on the theory that there was a crater-like void extending about one inch below surface level where two of the adjoined pavers met—a concave-shaped groove created by the chipped edge of one of the paver stones—which meant that the size of the vertical offset at that point was one and three-quarters inches, significantly greater than the offset height claimed by the City's expert if the depth of the groove is added to the offset above ground. Backed by Rosenthal's own accident reconstructionist, Albert Ferrari, this theory rests on the hypothesis that Rosenthal caught his shoe in the void, which is what caused him to pitch forward and fall.

Because Ferrari's theory of causation conflicted with deposition testimony in which Rosenthal had difficulty identifying exactly what caused him to fall, the court found the idea that Rosenthal's shoe was caught in the

3

void to be speculative. The court also rejected arguments from Rosenthal that there were various aggravating circumstances (such as shadows cast on the sidewalk, leaves covering the groove, and Rosenthal's age) that transformed what might otherwise have been a trivial defect into an actionable one. Pointing out that in the absence of such aggravating circumstances, vertical offsets of one and one-half inches or less are generally deemed to be trivial as a matter of law, the court granted summary judgment to the City and to Street 41 on that ground. The court did not reach Street 41's alternative no-duty argument.

Rosenthal now appeals from the ensuing judgment.

## II.  DISCUSSION

### A. *Standard of Review*

The purpose of summary judgment is to "cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Under the standards set forth in *Aguilar*, a cause of action may be defeated on summary judgment "if either of the following exists:  [¶] (1) One or more of the elements of the cause of action cannot be separately established, even if that element is separately pleaded[, or]  [¶] (2) [a] defendant establishes an affirmative defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o)(1)–(2); *Aguilar,* at pp. 849–850, 853.)  A moving defendant is not required to conclusively negate an element of the plaintiff's cause of action, but only to show that the plaintiff cannot establish at least one element of the cause of action. (*Aguilar,* at p. 853.)

Under the burden-shifting framework by which this standard is applied, the moving party initially bears the burden of production to make a prima facie showing that there is no triable issue of material fact.  (*Aguilar*,

4

*supra*, 25 Cal.4th at p. 850.) A triable issue of material fact exists if, and only if, a reasonable fact finder could determine the underlying fact in favor of the opposing party in accordance with the applicable standard of proof. (*Ibid*.) A moving defendant must produce evidence "that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Ibid*., quoting Code Civ. Proc., § 437c, former subd. (o)(2), now subd. (p)(2).) To meet his initial burden, "[t]he [movant] must 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' " (*Aguilar*, at p. 843, quoting Code Civ. Proc., § 437c, former subd. (b), now subd. (b)(1).)

"If [the movant] carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) In determining whether, based on the opposing party's showing, any triable issue of material fact exists, warranting trial, "the trial court may, in its discretion, give great weight to admissions made in deposition and disregard contradictory and self-serving affidavits of the party." (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451; see *Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 861–863 [disregarding plaintiff's declaration because it contradicted her earlier deposition testimony].)

Conjecture is " 'legally insufficient to defeat summary judgment.' " (*Peralta v. The Vons Companies, Inc.* (2018) 24 Cal.App.5th 1030, 1036.) On matters within common knowledge and experience, courts have discretion to eschew the need for expert testimony and make an independent judgment. (See *Los Angeles Unified School Dist. v. Superior Court* (2014)

228 Cal.App.4th 222, 246 ["[f]actfinders do not always need a declaration from an expert to reach a valid conclusion based upon common sense and human nature"]; see also *Cadam v. Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383, 389 (*Cadam*) [" 'It is well within the common knowledge of lay judges and jurors just what type of a defect in a sidewalk is dangerous.' "].)

On appeal, we review the trial court's summary judgment decision de novo, independently examining all evidence in the record in the light most favorable to the nonmoving party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768–769; *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 354.) Summary judgment can be affirmed on any ground, " ' "regardless of the considerations which may have moved the trial court to its conclusion." ' " (*Transamerica Ins. Co. v. Tab Transportation, Inc.* (1995) 12 Cal.4th 389, 399, fn. 4.) In undertaking our independent review of this record, we shall follow the same procedure used by the trial court, looking at (1) Rosenthal's pleadings to determine the elements of his claim; (2) the summary judgment motions to determine if Street 41 and the City had each established facts justifying judgment in their favor; and (3) Rosenthal's opposition to the motions—assuming both movants met their initial burden—to decide whether Rosenthal raised a triable issue of material fact. (*Y.K.A. Industries, Inc.*, *supra*, at p. 354.)

## B. *Governing Liability Principles*

It is "well established" that landowners do not have a duty to repair "minor, trivial or insignificant defect[s] in property." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927 (*Caloroso*); Gov. Code, § 830.2.) Whether a personal injury claim is founded on premises liability, which is the basis of the claim against Street 41, or the creation of a dangerous condition of public property, which is the basis of the claim against the City, Rosenthal must

6

prove as part of his case that a jury could reasonably conclude that the alleged defect at issue is sufficiently dangerous to be actionable. (*Caloroso*, 122 Cal.App.4th at p. 929.) A defect meets the necessary minimum test of dangerousness only if it "gives rise to . . . a substantial risk of injury when the property is used with due care . . . ." (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 733 (*Fielder*).)

Pedestrians are expected to act with ordinary care by watching out for defects in the sidewalk, particularly where they have previous knowledge of them. (*Dunn v. Wagner* (1937) 22 Cal.App.2d 51, 54 ["[M]inor defects are bound to exist in sidewalks and where the defect is trivial no liability exists. Here the defect, if it was a defect, was visible and had existed for a long period of time and plaintiff herself knew of its existence, as above stated, and by the use of ordinary care could have avoided the accident."].) The prospect that an alleged defect may violate standards set for the protection of persons who may be at unusually high risk while walking is irrelevant. (See *Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1102, 1110, fn. 5 (*Huckey*) [affirming judgment after trial court rejected plaintiff's argument that a defect was not trivial because " 'the height difference in the slabs violated [Americans with Disabilities Act (ADA)] regulations' "]; *Caloroso*, *supra*, 122 Cal.App.4th at pp. 928–929 [holding that trial court properly sustained objection to evidence that a sidewalk crack violated "certain building codes and standards" where nothing indicated "that these codes and standards ha[d] been accepted as the proper standard in California for safe sidewalks"].)

The height of an alleged sidewalk defect is "one of the most relevant" considerations in the assessment of dangerousness. (*Fielder*, *supra*, 71 Cal.App.3d at p. 734.) Absent aggravating circumstances, minor displacements in a sidewalk are trivial and nonactionable. (See *id*. at

pp. 733–734 ["In the present case the only facts alleged concerning whether the 'defect' was dangerous was the evidence presented as to the depth of the depression."].)  But in some cases, aggravating circumstances will heighten the risk of what might otherwise be a trivial sidewalk defect, making it actionable.

On this record, Rosenthal argues (1) that the height of the alleged vertical offset in the sidewalk, properly measured, is not trivial as a matter of law, and (2) alternatively, that the offset is actionable due to aggravating circumstances.  Before even getting to these issues on the merits, however, Rosenthal argues that neither the City nor Street 41 bore its initial burden under *Aguilar*, and that the summary judgment orders in favor of both defendants must be reversed for that reason alone.  Below, we analyze each of these arguments, addressing the motions by the City and by Street 41 in turn.

### C. *The City's Motion*

#### 1.  Initial Burden Under *Aguilar*

With respect to the City, Rosenthal's threshold procedural argument may be easily dismissed.  First, the City produced many color photographs of the alleged defect depicting a small chipped area at the intersection of four sidewalk paving stones.  (See Appendix A, exemplars of the City's photos.) These photos, alone, were sufficient for the court to assess the size of the defect, independent of the experts.  Second, the City produced measurements of the alleged defect.  Its expert, Haughton, opined that Rosenthal would have encountered a maximum one-quarter inch height differential walking in his direction of travel.

Third, the City submitted a declaration of its sidewalk inspector, Lee White, which established that there had been no prior incidents or complaints involving the subject sidewalk.  That, too, is well-recognized

evidence of triviality.  (*Huckey*, *supra*, 37 Cal.App.5th at p. 1108 [discussing that the City had met its prima facie showing by producing, among other things, evidence of no prior incidents].)  Fourth, the City produced Rosenthal's deposition testimony, which established that he was very familiar with the sidewalk where he fell, that he did not recall visibility issues, and that he was aware of the alleged defect and others near it before he fell.  Further, the City submitted evidence that Rosenthal had difficulty identifying and describing which part of the sidewalk caused him to fall with enough specificity to indicate his shoe may have been caught in a small void.  He simply testified that his right foot tripped while he was looking straight ahead.

Based on the foregoing, our review of the record shows the City did more than simply point out that Rosenthal could not prove his case.  It produced evidence, and in light of what it produced, we conclude the City did enough to shift the burden back to Rosenthal under the *Aguilar* burden-shifting framework.

### 2.  Trivial and Insubstantial Defect

Moving to the merits of the issue of triviality in sidewalk defect cases, defect heights "ranging from three-quarters of an inch to one and one-half inches have generally been held to be trivial as a matter of law." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1107.)  There is a plethora of authority for this point in the case law. (See, e.g., *Cadam, supra,* 200 Cal.App.4th at p. 389 [defect slightly under one inch]; *Beck v. City of Palo Alto* (1957) 150 Cal.App.2d 39, 43–44 [one and seven-eighths inches defect]; *Meyer v. City*

*of San Rafael* (1937) 22 Cal.App.2d 46, 47 [one and three-eighths inches defect]; *Dunn v. Wagner*, *supra*, 22 Cal.App.2d at pp. 53–54 [one inch defect].[2]

In this case, when shown a photo and pressed to circle the location where he tripped with precision, Rosenthal testified that he had "no idea" about that and just said he was sure he tripped on something in the area of the defect. Ferrari assumes he tripped at the groove's deepest point— disregarding expert and photo evidence that Rosenthal could not have fit his shoe in the groove at that location, let alone trip there, due to its narrow shape. The trial court found the groove's "depth" to be insignificant in deciding the danger of the alleged defect because there was no evidence Rosenthal's shoe entered the groove.

The court concluded that "the defect in this case is trivial as a matter of law because a reasonable jury cannot find that the condition presented a substantial risk of injury." We agree with that reading of the record. It seems clear that Rosenthal must have stumbled upon some imperfection in the pavement, but the void Ferrari focuses so heavily upon, a concave depression that is one inch at its deepest point, is so small that it would be difficult for someone to squeeze their toe inside. The City's expert, Haughton, concluded that Rosenthal "could not possibly have stepped down into this

---

[2] See also, e.g., *Caloroso*, *supra*, 122 Cal.App.4th at pages 925, 928 (holding that an elevation difference of less than a half-inch was trivial, even when it was arguably irregularly shaped); *Ursino v. Big Boy Rests.* (1987) 192 Cal.App.3d 394, 396–397 (holding that a three-quarter inch differential between sidewalk slabs was trivial); *Whiting v. City of National City* (1937) 9 Cal.2d 163, 164, 166 (holding that several-foot-long offset of three-quarters of an inch in a sidewalk was trivial); *Fielder*, *supra*, 71 Cal.App.3d at page 726 ("when the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law"); *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 74 (a ridge of a half-inch above the surface of the sidewalk was trivial).

tapered L-shaped void with the traditional walking shoes and normal gait that he described in his deposition testimony." Not only is Ferrari's theory of Rosenthal's having wedged his shoe into a void unsupported by Rosenthal's deposition testimony, it is implausible given the groove's size and depth.

Here on appeal, Rosenthal contends the trial court misread this deposition testimony as an admission that he did not know what caused his fall, contrary to the basic rule that on summary judgment the record must be read generously in favor of the non-movant. We disagree that the trial court took the view that Rosenthal did not know what caused his fall. Quite the contrary, the court accepted the inference Rosenthal draws from the location of the accident—that because the vertical offset is located exactly where he fell, it is reasonable to infer he tripped on it, and that caused his fall.[3] It is the further inference, drawn by Ferrari, that Rosenthal's shoe must have become wedged in the groove, that the court declined to accept as unreasonable.

In the absence of any evidence suggesting some part of Rosenthal's foot actually went into the groove, we agree that Ferrari's hypothesized scenario is speculative. The photos submitted by the City clearly indicate the dimensions involved here are so small that it was unlikely Rosenthal's shoe

---

[3] The court did, to be sure, observe as an aside that "there are times when people trip and fall even when the condition of the sidewalk or floor is perfectly good." But the court did not grant summary judgment to the City for lack of any evidence of *causation* (i.e., failure to prove Rosenthal's fall was caused by a sidewalk defect, rather than by him simply losing his balance). The thrust of the court's reasoning, instead, was that whatever sidewalk defect Rosenthal tripped upon was trivial as a matter of law. The significance of the deposition testimony in which Rosenthal has difficulty identifying the exact location of the defect that caused his fall, as we read the testimony, is that it is insufficient to support Ferrari's causation theory, not that it should be taken as proof there was no defect at all.

could have fitted in the groove as Ferrari contended. Rosenthal insists the total vertical height of the defect at issue here is one and three-quarters of an inch—if the depth of the groove is included. But because there was no proof Rosenthal's shoe somehow wedged into this rather shallow groove, the trial court was correct to conclude that, to arrive at the relevant vertical offset, it was unnecessary to combine the depth of the groove with the above-ground offset.

### 3. Aggravating Circumstances

In a fallback line of argument, Rosenthal contends the size of the offset is not the only relevant consideration here. According to him, there were aggravating circumstances that made the offset especially hazardous. These unique aggravating circumstances, according to Rosenthal, bring his case within the exception for cases in which otherwise trivial defects may be actionable where aggravating circumstances heighten the risk they pose. Under the rule he invokes in support of this line of argument, an aggravating circumstance is one that makes the alleged defect "more dangerous than its mere abstract depth would indicate." (*Fielder*, *supra*, 71 Cal.App.3d at p. 734.)

In support of his aggravating circumstances argument—tracking various points made by his expert, Ferrari—Rosenthal contends the groove was irregularly shaped. But that analysis lacks merit for the same reason all of his other arguments about Rosenthal wedging his shoe in the groove fail. There is no evidence of it. Rosenthal argues, for example, that the alleged defect here posed a "tripping hazard" for those especially "at risk," such as the elderly or "those with ambulation impairments." He also notes that the alleged defect may have been dangerous to him as a 77-year-old man who tends to "scuff the forward edge of his shoes" while walking. The theory of heightened risk specific to Rosenthal, or indeed to any special class within

12

the group of ordinary pedestrians, is inconsistent with governing law. The legal standard is that property conditions must be safe for the ordinary person, not for the elderly or ambulatorily impaired. (See *Huckey*, *supra*, 37 Cal.App.5th at pp. 1102, 1110, fn. 5; *Dunn*, *supra*, 22 Cal.App.2d at p. 54.) Even Ferrari agrees that, "typically," "shoes [would] not touch the walkway during the swing phase," making it nearly impossible for most pedestrians to place the toe of their shoe in the groove, let alone trip there.

Rosenthal next argues that, on the day of the accident, shady conditions at the particular location where he fell, and leaves obscuring the vertical offset, made the sidewalk defect at issue especially dangerous. But to the contrary, the circumstances surrounding Rosenthal's fall buttress the trial court's conclusion that any alleged defect was not substantially likely to cause a reasonably prudent person injury. Rosenthal testified that he had walked past this section of the sidewalk without a problem for decades, and that he even knew of the alleged defect. He further testified that, on the one occasion he fell, he was looking "straight ahead," not at the sidewalk. While the alleged sidewalk defect was small, nothing suggests that Rosenthal could not have seen and avoided it had he looked down at where he was stepping, as he admits he "should have."

Rosenthal also admits the weather was a non-issue and recalls no lighting issues impeding his visibility. There was no indication "that the ground was damp or wet" or slippery. (See *Caloroso*, *supra*, 122 Cal.App.4th at pp. 925, 927 [defect on "dry" ground trivial].) A weather-related argument was made and rejected in *Caloroso*, where the plaintiff contended that the sun was blocking his sight. There is even less of a basis for such an argument here, where the fall occurred at 3:00 p.m. while the sun was still out. (*Id*. at p. 929 [a half-inch deep defect trivial as a matter of law despite

13

the sun blocking the plaintiff's view]; see also *Cadam, supra,* 200 Cal.App.4th at p. 389 [defect trivial where the fall occurred on a sunny day].)  It fails here too.

Taking another tack with his aggravating circumstances argument, Rosenthal argues that the sidewalk condition at issue in this case was out of compliance with the ADA.  In the absence of a pleaded ADA violation, relied upon to establish the applicable standard of care—which is not the theory on which the complaint is founded—that argument is beside the point.  (*Huckey*, *supra*, 37 Cal.App.5th at p. 1108; *Caloroso, supra*, 122 Cal.App.4th at p. 928.) Finally, Rosenthal suggests that the groove was only "part of a broader dangerous condition" due to the existence of other defects on the same pavement, but we see no evidence supporting such argument.  The case Rosenthal relies upon to support his "part of a broader dangerous condition" argument, *Clark v. City of Berkeley* (1956) 143 Cal.App.2d 11, is distinguishable.  There, after examining relevant photo evidence, the court found the entire sidewalk in an "extremely dilapidated and fragmented condition." (*Id.* at p. 15.)[4]

The two other aggravated circumstances cases on which Rosenthal relies are distinguishable as well.  In *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, for instance, the plaintiff sued the city because a steel rod protruded one-quarter inch above a concrete tire-stop.  (*Id.* at pp. 266–

---

[4] In passing, Rosenthal weaves in two other arguments—that the City should be liable for failing to erect a warning sign, and that the City should be liable because there is evidence of poorly executed past repairs to paving stones at the location where the accident happened—but both of these versions of the argument assume the conclusion they are offered to support: that there are aggravating conditions here which heightened the risk in a particular way.  Because both lines of argument rest on the same faulty assumption, they fail for lack of a supportable premise.

270.)  The court refused to find the steel rod trivial.  It observed that the presence of distractions, such as cars in the area, made the rod difficult to see.  (*Id*. at p. 270)  But most of the court's analysis focused on the ways in which a steel rod sticking out of an elevated tire-stop is "[u]nlike sidewalk cases, where the planes are horizontal."  (*Ibid*.)  After all, when "persons must step up from the plane they are walking on to a higher plane in order to continue on their route," a small protrusion may be "large enough to cause an injury while being small enough to avoid easy detection."  (*Ibid*.)  This case, of course, is based on a small vertical offset on a flat sidewalk.  Rosenthal had seen the alleged defect before, and nothing would have stopped him from seeing it that day, had he been looking.

In *Balkwill v. City of Stockton* (1942) 50 Cal.App.2d 661, the plaintiff sued over two holes on a sidewalk "a few inches apart and approximately four or five inches long, two inches wide and from one-half to two inches in depth." (*Id*. at p. 664.)  The two holes may not have been trivial, as a matter of law, largely based on additional evidence.  Plaintiff was the third person to have tripped at the location of the two holes in a year.  (See *id*. at p. 665; cf. *Whiting v. City of National City*, *supra*, 9 Cal.2d at p. 164 [defect trivial where four people fell in the past five years].)  This case is different, even assuming *Balkwill* is still good law.  (See *Brown v. Poway Unified School District* (1993) 4 Cal.4th 820, 831 [suggesting that *Balkwill* is no longer good law to the extent it relied on " 'the happening of the accident' " at issue as definitive " 'evidence that public property was in a dangerous condition' "].)  Rosenthal complains about a single alleged defect on the sidewalk and provides no evidence of any other complaints or falls at the same spot.  Instead, he admits that he walked past the sidewalk safely for decades.

Accordingly, we think the trial court was correct to conclude that Rosenthal's fall had nothing to do with aggravated conditions heightening the risk of an otherwise trivial defect, but instead that it reflects his failure to watch out for a visible sidewalk imperfection he could have avoided had he exercised more care for his own safety. (See *Mora v. Favilla* (1921) 186 Cal. 199, 206 ["[t]he fact that defendant had wrongfully and unlawfully created a dangerous condition of the sidewalk would not excuse plaintiff in exposing himself to injury if he knew or had warning of the dangerous condition and could with a slight change of route have avoided it"]; *Dunn, supra*, 22 Cal.App.2d at p. 54 [finding a defect trivial as a matter of law since the plaintiff "kn[ew] of the danger" and was required to "look out for it"], citing *Davis v. California St. C. R. R. Co.* (1894) 105 Cal. 131, 138.)

## D. *Street 41's Motion*

### 1. Affirmance on Any Ground

The posture of the appeal with respect to Street 41 differs from that of the City, because the court sustained objections to much of the evidence submitted in support of the motion, including the declaration of Street 41's expert, Kirsten White. Street 41 filed its summary judgment motion in September 2018, and the City filed its motion in November 2018. Rather than simply file a joinder when the City filed its summary judgment motion, adopting the City's proof on the trivial defect issue as a bootstrap measure, Street 41 relied solely on its first-filed own motion, supported by a declaration from its expert, together with photographs and measurements taken by her. So when the court sustained Rosenthal's objections to the bulk of the evidence supporting the motion, that left Street 41 with no evidentiary showing to support its prima facie case of triviality. Thus, with respect to Street 41, Rosenthal's argument that there was a failure to bear the initial burden of production under *Aguilar* is correct as to the trivial defect issue.

16

Absent some other ground to support the grant of summary judgment as to Street 41, we might be constrained to reverse on that point.

But apparently anticipating this possible problem, Street 41, correctly invoking the rule that we may affirm on any ground supported by the record, whether or not relied upon by the trial court (*Transamerica Insurance Co. v. Tab Transportation, Inc.*, *supra*, 12 Cal.4th at p. 399, fn. 4), argues that there is such an alternative ground for decision in its favor as a matter of law:  As a private landowner, Street 41 contends, it cannot be held liable to Rosenthal because it owed him no duty.  There is no dispute here that the owner of the public sidewalk in question is the City and that Street 41 is merely the owner of adjacent private land.  That being the case, Street 41 contends, summary judgment in its favor may be sustained on the ground that it owed Rosenthal no duty of care to maintain or repair a public sidewalk.

Though, in his opening brief on appeal, Rosenthal does not address the issue of whether Street 41 owed him a duty, he does address the issue in his reply brief.  Street 41 urges us to treat its no-duty arguments as unrebutted and Rosenthal's effort to address the point in his reply as forfeited because he fails to deal with it in his opening brief.  While it is true that arguments raised for the first time in reply are generally forfeited, we will address the duty arguments raised by Rosenthal in reply because Street 41 anticipatorily—and fully—covers these arguments in its responding brief. (*Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 33 ["Ordinarily, we would deem arguments made for the first time in reply to have been forfeited, but since [respondent] addresses both issues in his responding brief, unprompted, we briefly address each one."].)

### 2.  Absence of Duty

"The elements of a cause of action for premises liability are the same as those for negligence:  duty, breach, causation, and damages." (*Castellon v.*

17

*U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.) The common law rule is that "abutting property owners and occupants ha[ve] no affirmative duty to maintain or repair a public sidewalk and [are] not liable for injuries occurring there which resulted from the mere failure to maintain it." (*Dennis W. Williams v. Foster* (1989) 216 Cal.App.3d 510, 515 (*Williams).*) Because "the common law d[oes] not impose [a] duty to repair a defective public street upon the abutting owner . . . any such duty would have to be found in the statutes." (*Ibid.*, citing *Eustace v. Jahns* (1869) 38 Cal. 3, 14–15.) Such a statute must create a duty through " 'clear and unambiguous language.' " (*Williams, supra*, at p. 517, quoting *Schaefer v. Lenahan* (1944) 63 Cal.App.2d 324, 331–332 (*Schaefer*).)

Rosenthal argues that his review of relevant City of Oakland documents suggests that the City has advised adjacent property owners since the mid-2000's, at the latest, that property owners have liability to pedestrians injured on public sidewalks adjacent to their properties. He cites *Selger v. Steven Bros., Inc.* (1990) 222 Cal.App.3d 1585 for the proposition that ordinances requiring an abutting landowner to maintain a public sidewalk must be construed to create a duty of care to third persons if the ordinance clearly and unambiguously provides the same, and in any event that, wholly apart from such an ordinance, property owners have a basic duty of care to refrain from conduct which would render a sidewalk dangerous to the public. (*Id.* at p. 1590.)

Rosenthal has not identified any statute or ordinance that clearly and unambiguously states that Street 41 owes pedestrians such a duty. Under state statutes, any duty a local business has to maintain a sidewalk is owed to the City, not the general public. (See *Schaefer, supra*, 63 Cal.App.2d at pp. 331–332; *Williams, supra*, 216 Cal.App.3d at pp. 515–522.) In *Schaefer*,

18

the appellant argued that an amendment to the Improvement Act of 1911 (the Amendment) "creates a statutory duty to repair on the part of the owner, and that violation of such duty gives rise to a cause of action against such owner in favor of travelers injured on such sidewalks." (*Schaefer*, *supra*, at p. 326.) Consistent with "the overwhelming weight of authority" nationwide (*id.* at p. 327), the Court of Appeal disagreed. (*Id.* at pp. 328–332 [noting that many of these authorities were interpreting "statutes as broad or broader than the one here involved"].) Although the Amendment directed landowners " 'to maintain any sidewalk . . . in such condition that the same shall not endanger persons or property,' " its enforcement mechanisms indicated that this duty was only owed to the city for the cost of repairs the city found necessary to make. (*Id.* at pp. 326–327, quoting Stats. 1935, ch. 771, § 31, p. 2149.)

Rather than create a private cause of action, the Amendment directed the superintendent of streets to mail to the property owner and post on the premises a notice to repair. (*Schaefer*, *supra*, 63 Cal.App.2d at p. 327.) If the property owner failed to "make the required repairs, the superintendent [would] do so. After the superintendent ma[de] the repairs, he [would then] prepare a notice of cost of repairs." (*Ibid.*) The Amendment's "obvious purpose . . . was to provide a means of reimbursing the city for the cost of the repairs," not to "impose a wholly new duty upon the property owner in favor of third persons." (*Schaefer, supra,* at p. 332.) Streets and Highways Code section 5610 (section 5610), the Improvement Act's successor statute, does not create a duty between landowners and pedestrians for the same reasons. (*Williams*, *supra*, 216 Cal.App.3d at pp. 515–522.)

Even where there is no pertinent statute, local ordinances can sometimes make adjacent property owners liable to maintain public

19

sidewalks.  (See *Gonzales v. City of San Jose* (2004) 125 Cal.App.4th 1127, 1132, 1134 [San Jose ordinance providing "that if an abutting property owner fails to maintain a sidewalk in a nondangerous condition and any person suffers injuries as a result thereof the property owner shall be liable to such person for the resulting damages or injury" creates duty].)  But absent such an ordinance, local businesses are not liable to pedestrians for injuries sustained on public sidewalks.  (E.g., *Contreras v. Andersen* (1997) 59 Cal.App.4th 188, 195–197 [no city ordinance created such a duty]; *Selger v. Steven Bros., Inc., supra,* 222 Cal.App.3d at pp. 1589–1590 [same].)

The relevant provisions of the Oakland Municipal Code largely track the language in both the Amendment and section 5610.  (Compare Sts. & Hy. Code, § 5610 et seq. with Oakland Mun. Code, § 12.04 et seq.)  The Oakland Municipal Code requires the Superintendent of Streets to provide local businesses written notice that a sidewalk is "out of repair."  (Oakland Mun. Code, § 12.04.020.)  Once notice is given, the local business may then either make the repairs itself or pay the City to make them.  (Oakland Mun. Code, § 12.04.030.)  Nowhere does the Code create a private cause of action or suggest that property owners are liable to pedestrians.  Like section 5610, the City of Oakland's Municipal Code establishes a duty between local businesses and the City, not between local businesses and the general public. (Cf. *Gonzales v. City of San Jose, supra*, 125 Cal.App.4th at p. 1132.)

The only other exception to the no-duty rule is if something on the adjoining private landowner's property (e.g., a tree with roots extending under the sidewalk) causes the sidewalk to be dangerous.  (See *Lee v. Ashizawa* (1964) 60 Cal.2d 862, 865–866 [adjoining landowner can be liable if "the defendant, or his employees, in the course of using the property for commercial purposes, created a hazard"]; *Alpert v. Villa Romano*

20

*Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1334–1335 [landowner "exercise[d] possession or control over [the] adjacent land" by, for instance, "plant[ing] and maintain[ing] all of the trees and vegetation in the area, on both sides of the sidewalk," "install[ing] sprinklers on both sides of that walkway," and "water[ing] and trim[ming]" the trees which grew the roots that were the cause of uplifting and cracking in the sidewalk]; *Williams*, *supra*, 216 Cal.App.3d at p. 515 [adjoining landowner can be "liable for injuries occurring on a public sidewalk which were caused by the abutter's negligence or nuisance involving some act or omission other than the mere failure to maintain or repair the public sidewalk"].)  There is no evidence or allegation of any such thing here.

We conclude that Street 41 has the better of the argument on the issue of duty.  Street 41 is a private business.  As such, it is not a guarantor of the safety of local sidewalks for the public at large.  Even if the City had ordered it to pay for or make repairs to the sidewalk—which the City is empowered to do but did not do here—that would still be nothing more than a matter between Street 41 and the City.  Because, on this record, the absence of a duty of care owed by Street 41 to Rosenthal negates an element of Rosenthal's claim against it, Street 41 was entitled to summary judgment.

## III.  DISPOSITION

The judgment is affirmed.  Respondents to recover their costs on appeal.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
BROWN, J.

21

# APPENDIX

