Filed 2/17/21  Liss v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KATHLEEN LISS, | D076971 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00058658-CU-PO-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Reversed.

Law Offices of Brandon M. Smith and Brandon M. Smith for Plaintiff and Appellant.

Mara W. Elliott, City Attorney, George F. Schaefer, Assistant City Attorney, Jacqueline J. McQuarrie, Deputy City Attorney for Defendant and Respondent.

Plaintiff Kathleen Liss appeals from a judgment entered in favor of defendant the City of San Diego (the City) on her causes of action for dangerous condition of public property and premises liability after she tripped and fell on a public sidewalk where there was an approximate one

and one-half inch difference between a portion of the sidewalk with a water meter box lid and the adjacent sidewalk section. The trial court granted the City's motion for summary judgment on the ground that the City had shown that Liss could not establish one or more elements of her cause of action, i.e., concluding that the defective condition was trivial, that it was not created by the negligence or wrongful conduct of the City's employee(s), and that the City had neither actual nor constructive notice of the dangerous condition a sufficient time prior to the injury to take measures to protect against the condition.

On appeal, Liss contends that the trial court erred in granting summary judgment in favor of the City. Specifically, Liss challenges the court's conclusion that the defect was trivial as a matter of law. She argues the court's exclusion of her expert's testimony on that point was both erroneous and reflected court bias. She also takes issue with the trial court's conclusion that she could not demonstrate the City had actual or constructive knowledge of the alleged dangerous condition. Our review of the record on summary judgment indicates the City did not meet its burden to show that Liss cannot establish one or more elements of her cause of action. We therefore reverse the trial court's judgment in favor of the City.

BACKGROUND AND PROCEDURAL FACTS

On January 25, 2018, Liss and her friend Linda Karelis were walking in a La Jolla neighborhood for exercise. Karelis had walked on the street where the incident occurred about 20 times before that day, but Liss said it was the first time she had walked the particular route, and she was not familiar with the street at the time.

As the two approached the sidewalk in front of 1643 Calle De Cinco, they noticed a car backing out of the driveway. The vehicle stopped to allow

2

the women to pass behind it. As Liss moved around the rear of the vehicle, she felt her right toe hit the corner of the sidewalk containing the water meter box depression closest to the street, and Karelis saw Liss pitch forward and fly into the street, where she landed primarily on her face.

Karelis did not see what caused Liss to fall, but after her friend lay on the ground, she saw the spot where Liss might have caught her toe, noting there was a "pretty good size lip on a water meter access point in the sidewalk." Karelis stated there was nothing besides the water meter box that posed any sort of hazard. The women were walking around 9:30 in the morning, and there were no rocks or other debris along the lines of the water meter box or the sidewalk; nor was there any grease or oil.

Liss did not see the water meter cover as she walked toward it that morning; her attention was focused on the vehicle in the driveway. Although Karelis testified she is generally aware of things to watch for on a walk, she did not recall previously noticing the specific water meter that Liss tripped on.

After Liss was home, Karelis returned to the location of the incident and took pictures of the water meter box and sidewalk.

A team of student engineers had walked that area of La Jolla and documented on or about January 21, 2015, that the sidewalk at 1643 Calle de Cinco was in good condition. Prior to Liss's fall, the City had not received any complaints or reports of concerns dating back to at least 2011. Additionally, Public Utilities employees read the water meters every two months and can report problem conditions they observe with a meter box and lid.

Liss presented her claim to the City on April 9, 2018. (Gov. Code, § 905.) A claims representative in the City's Risk Management Department investigated the claim and took photographs of the location of the incident on

or about July 31, 2018.  The employee measured the height differential between the water meter cover and the sidewalk as between one-half inch and one inch.

After the City rejected the claim, Liss filed her complaint in November 2018, alleging dangerous condition of public property and premises liability.

Liss's mechanical engineering expert Zachary M. Moore visited the location of the incident on January 8, 2019 to inspect it, but the City had already begun to repair the water meter cover, so any height differential had been removed prior to the site inspection.  He took measurements of the sidewalk and the water meter box, and he took photographs.  A city employee explained in a declaration that she was working on a job nearby when a customer approached her and asked her to replace the water meter box in front of 1643 Calle de Cinco.  Unaware there was a repair crew already scheduled to repair the meter and unaware of the pending litigation, the employee replaced the water meter box.

The City moved for summary judgment in July 2019.

In opposition, Liss filed a declaration in which Moore opined, among other things, that the height differential ranged from over one half of one inch to over one and one-half inches and that any height differential beyond six-tenths of one inch has the substantial possibility of causing a pedestrian to slip and fall.  The City objected to the declaration, contending that expert testimony was unnecessary because the situation was one within the common experience and also that the opinions offered by Moore lacked foundation.  The court sustained all but one of the City's objections to Moore's declaration.

At the hearing, the court said it was not the first time it had sustained objections to declarations offered by the firm employing Moore.  The court said it was aware that firm advertises heavily, then it told counsel:  "This is a

4

shoddy, incomplete job of—of trying to support your client's claims by someone who didn't spend enough time and didn't do a good job establishing a foundation for his opinions." The court continued: "This is the Lexco firm, and I have sustained objections before this year to declarations offered by this same outfit. This is—it's poor work." The court again said, "It's poor. He did not do a good job with this." When counsel began to comment that the court was basing its opinion of the expert's declaration on dealings with his firm in other matters, the court interrupted: "I'm not basing [my decision] on the fact that—that the firm is a bad firm, don't get me wrong. I'm basing it on the fact that this specific declaration does not contain an adequate foundation for the opinions that have been offered."

When Liss's counsel argued there was evidence the water meter had been read in person January 12, 2018, shortly before the incident, the court asked where that foundational evidence was located. Counsel argued a response to a special interrogatory stated that employees read water meters every two months and could report problem conditions with the meter box and lid at that time, which implied they were physically present at the water meters. Counsel told the court he had additional documentation with him that showed a route number attached to the meter readings, suggesting the meter was read in person, but the court declined to receive that evidence because it had not been submitted in the summary judgment papers.

Liss's counsel also told the court that the evidence indicated the highest point of height differential was one-and-one-half of an inch, and he argued that because this falls along the upper threshold of what could be considered trivial, and there were aggravating factors, a jury should decide if the condition were a trivial defect. He identified as aggravating factors the plaintiff's lack of familiarity with the area of the fall, the inconsistency in the

5

height differential due to the slope of the driveway entrance, and the distraction of a vehicle backing out of the driveway where the water meter was located.

Counsel for the City argued that aggravating circumstances must regard the condition itself and not other activities nearby. She also told the court the City's policy was for meter readers to enter a trouble code when they conducted meter readings in person and discovered an issue. She argued that had a reader been on site, the reader must not have determined that the lid was so sunken that it needed to be reported because there was no report. And because there were no reports or complaints regarding this particular meter, Liss did not establish a triable issue of fact regarding notice.

In its order granting summary judgment, the trial court noted that Liss alleged a height differential of one and one-quarter inch in her complaint and that her expert opined that the differential was as large as one and one-half inches. Citing to *Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092 (*Huckey*), the court noted that " '[s]idewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law,' " and it concluded "the height differential at hand may be viewed as trivial, as a matter of law." The court stated that the height differential "of 1 1/2 inches (plaintiff's stated height differentiation) is not a dangerous condition of public property under Gov[ernment] Code section 835. [Liss's] view of the water meter box was not obstructed. There is no evidence of prior similar accidents. No prior complaints about the water meter box or cover had been made to the City's Street Division, Risk Management Department, or Citizens' Assistance Program. [Liss] is unaware of anyone else tripping over the water meter box. The accident

6

occurred in the morning, while it was light outside. Thus, when considering the surrounding circumstances, the accident site is not a dangerous condition . . . , but only a trivial defect." The court also commented that it did not consider the location of the incident near the driveway, and it was not apparent from the submitted photographs that the sidewalk was "jagged" or had an "uneven condition." Ultimately, the court concluded that there were no aggravating circumstances, and it stated there was "an overwhelming amount of evidence that the accident site at the time of [Liss's] injury was a trivial defect and not a dangerous condition."

Liss timely appealed.

## DISCUSSION

## I

## COURT RULINGS ON OBJECTIONS TO EXPERT DECLARATION

Liss argues the court abused its discretion by excluding the opinion of her expert from consideration.

### A. Additional Facts

The City objected to substantially all of Moore's declaration on a variety of grounds, including lack of foundation (Evid. Code, §§ 403, 702, 801 & 802) and improper expert opinion (*Id*. at § 801). This included objections to statements that the metal water cover had been replaced with a concrete-colored cover between June 2007 and December 2008, that the water meter box showed evidence of sinking in December 2015, that the City's employees are frequently physically at the subject water meters when doing readings, that the photographs taken by the City's employee did not truly and accurately depict the subject height differential, that the true height differential increased from one-half inch at the south edge to one inch in the center to one and one-half inches at the north edge that the height

7

differential created a substantial trip hazard and an unsafe condition, that any height differential at or in excess of .59 inches has a substantial possibility of causing a pedestrian to trip and fall, and that it was foreseeable that a pedestrian would not identify the height differential at issue here. Moore's declaration explained he based his opinions on the papers submitted by the City in connection with the motion for summary judgment, the depositions of Liss and Karelis, the complaint, a January 21, 2015 sidewalk inspection record, and several city and state code sections, three academic articles, Google images, photographs taken by the City, and photographs taken during his site inspection.

The court concluded that Moore's explanation was "devoid of foundation for his opinions and contains speculation." It noted that expert opinions based on conclusions or assumptions not supported by the record had no evidentiary value for the purpose of summary judgment. (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 563.) Separately, the court concluded the presence of photographic evidence is sufficient to show the defect, so no expert opinion was needed to determine the dangerousness of the condition.

### B. Legal Principles

We review evidentiary rulings on summary judgment for abuse of discretion. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 192, fn. 15; *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 928 (*Caloroso*).) It

8

is appellant's burden to challenge any evidentiary ruling and demonstrate error. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.)

To be admissible, an expert's opinions may not be based on assumptions that lack evidentiary support or speculation. (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 525 (*Kelley*); *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510 (*Bushling*).)

Additionally, expert witness testimony is limited to an opinion on " . . . a subject that is sufficiently beyond common experience [so that] that the opinion of an expert would assist the trier of fact . . . ." (Evid. Code, § 801.) When the proffered testimony regards a matter within the common experience of lay people and the fact finder can draw a conclusion from the facts as easily as the expert, the expert testimony is inadmissible. (*Westbrooks v. State of California* (1985) 173 Cal.App.3d 1203, 1210 (*Westbrooks*).)

### C. Analysis of Evidentiary Objections

Liss argues on appeal that Moore's opinions were founded on "Moore's review of documentation and other data related to the case as set forth in Paragraph 5 of his declaration," Moore's review of photographic evidence supplied by the City, and Moore's expertise in mechanical engineering.

It is unclear on what basis Moore concludes that the cover to the water meter was changed, why he believes there was evidence of the water meter box sinking as early as December 2015, or why the true height differential was one and one-half inches when he was unable to measure the differential since the City had already undertaken repairs. Referencing Moore's review of "documentation and other data related to the case" as providing foundation

9

is insufficient; the information and opinion provided in the declaration does not appear to derive from the details provided in the complaint, the declarations, or the other papers submitted in connection with the motion for summary judgment.[1]

Further, Moore's opinions do not regard subject matter that extends beyond common experience. (See *Westbrooks*, *supra*, 173 Cal.App.3d at p. 1210.) Walking along a sidewalk, including one with height differentials, falls within the common experience, and lay people are capable of assessing whether a defect is trivial. (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 732 (*Fielder*) [no need for expert opinion regarding nature of defect; "It is well within the common knowledge of lay judges and jurors just what type of a defect in a sidewalk is dangerous"].) Thus, the court did not abuse its discretion by concluding that expert testimony on this point was unnecessary.

D.  Analysis of Bias Allegations

Relying on the court's statements about the quality of the expert's testimony and the quality of his firm, Liss also maintains that the court was biased, and, thus, it did not rule impartially on the evidentiary objections or while reaching a decision more broadly.

It would have been preferable for the court to resist sharing information about the frequency of the firm's advertisements or his rulings regarding that firm in previous cases before it. However, these comments themselves are insufficient to demonstrate bias that impacted the outcome, particularly when the court told the parties it was not basing its determination in the case on its opinion of the firm but on the basis that the

---

[1]    The City's responses to special interrogatories and a water meter log implied the meter was read in person. However, as we detail *post*, the water meter log was not submitted in connection with the motion for summary judgment, and the court did not permit the late introduction of the evidence.

declaration did "not contain an adequate foundation for the opinions that have been offered."  As we discussed *ante*, the court's evidentiary ruling was not erroneous; it appeared that Moore did not have a clear foundational basis to support his opinions, and that is a valid basis for excluding the opinion.  (*Bushling*, *supra*, 117 Cal.App.4th at p. 510; *Kelley*, *supra*, 66 Cal.App.4th at p. 525.)  Further, even had he better established a foundation for his conclusions, much of Moore's opinion is unnecessary because the issue is one that falls within the common experience.  (*Fielder*, *supra*, 71 Cal.App.3d at p. 732.)  Finally, although the court excluded the expert's opinion, we note in reaching its conclusion, the court used a height differential of one and one-half inches, the number offered by Liss and her expert, rather than the smaller one half of an inch height differential offered by the City.

## II

## SUMMARY JUDGMENT

### A.  Legal Principles

Summary judgment is appropriate when all of the papers submitted by the parties show there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  (Code of Civ. Proc., § 437c, subd. (c).)  A defendant who moves for summary judgment has the initial burden of showing each alleged cause of action is without merit.  (*Ibid*.; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)  A defendant can meet that burden by showing one or more elements of a cause of action cannot be established or that there is a complete defense to that cause of action.  (Code of Civ. Proc., § 437c, subd. (p)(2).)  A defendant seeking to prevail on the ground that one or more elements of the cause of action cannot be established must make an affirmative showing that the plaintiff

11

does not possess, and cannot reasonably obtain, evidence to prove her case. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889 (*Gaggero*).)

If the defendant meets this burden, the burden shifts to the plaintiff to produce evidence to make a prima facie showing of the existence of a triable issue of material fact as to the cause of action or affirmative defense. (Code of Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849-851.) If the plaintiff fails to meet that burden, the motion for summary judgment will be granted. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 780-781 (*Saelzler*).)

We review the grant of summary judgment de novo. (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 565 (*Stathoulis*).) We view the evidence in a light most favorable to the party opposing the motion, liberally construing his or her evidence and strictly scrutinizing the moving party's evidence, and we resolve any evidentiary doubts or ambiguities in plaintiff's favor. (*Saelzler*, *supra*, 25 Cal.4th at p. 768.)

A triable issue of material fact exists if the evidence would allow a reasonable trier of fact to find the underlying facts in favor of the party opposing the motion in accordance with the applicable standard of proof. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

### B. Trivial Defect Doctrine

Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity

12

within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

A dangerous condition is one that creates a substantial risk of injury when the property is used with due care in a manner that is reasonably foreseeable. (Gov. Code, § 830, subd. (a); *Stathoulis*, *supra*, 164 Cal.App.4th at pp. 565-566.) A condition is not dangerous "[i]f the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (Gov. Code, § 830.2.)

There is no duty for a landowner, even a public one, to repair trivial defects or maintain property in "an absolutely perfect condition." (*Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 398-399 (*Ursino*).) "A municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to travel. Minor defects due to continued use, or action of the elements, or other cause, will not necessarily make the city liable for injuries caused thereby." (*Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 73 (*Barrett*).) This is because even when a property owner exercises reasonable care in maintaining property, some defects are bound to exist (*Stathoulis*, *supra*, 164 Cal.App.4th at p. 566).

"Ordinarily the existence of a dangerous condition is a question of fact." (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704, citing *Peterson v.*

13

*San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810.) But a court can resolve this question as a matter of law "if reasonable minds can come to but one conclusion." (*Peterson*, at p. 810; *Gentekos v. City & County of San Francisco* (1958) 163 Cal.App.2d 691, 697 (*Gentekos*) [question of fact exists if reasonable minds could differ as to whether the condition was dangerous].)

## C. Analysis

Before reaching its conclusion that the height differential on the sidewalk was trivial, the trial court quoted *Huckey*: "Sidewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law." (*Huckey*, *supra*, 37 Cal.App.5th at p. 1107.) The trial court then concluded: "As such, the height differential at hand may be viewed as trivial, as a matter of law." It also recognized that it should not rely solely upon the size of the defect, meaning the depth or height of the sidewalk depression or elevation, because it was also to consider "other circumstances or factors includ[ing] whether there were any broken pieces or jagged edges in the area of the defect, whether there was any dirt, debris or other material [that] obscured a pedestrian's view of the defect, the plaintiff's knowledge of the area, whether the accident occurred at night or in an unlighted area, the weather at the time of the accident, and whether the defect has caused any other accidents." (See *Huckey*, at p. 1105.)

Liss challenges the court's apparent reliance on *Huckey*'s conclusion that courts have generally held that a height differential of up to one and one-half inches is trivial as a matter of law, and she contends the law does not so hold. We agree; the cases on which *Huckey* relies do not point to any situation in which the height differential was one and one-half inches. (See

14

*Barrett, supra*, 41 Cal.2d at p. 72 [differential of half an inch, with gradual sloping]; *Sischo v. City of Los Banos* (1940) 37 Cal.App.2d 717, 718 [sidewalk slope of 58 one-hundredths of one inch]; *Balmer v. City of Beverly Hills* (1937) 22 Cal.App.2d 529, 530 [height differential of one inch in one corner of the sidewalk slab]; *Whiting v. City of National City* (1937) 9 Cal.2d 163, 164-165 [gradual rise in sidewalk from no differential to three-quarters inch]; *Dunn v. Wagner* (1937) 22 Cal.App.2d 51, 53-54 [one inch differential of which plaintiff was aware]; *Meyer v. City of San Rafael* (1937) 22 Cal.App.2d 46, 47, 50 [differential of five-eighths of an inch to one and three-eighths of an inch, but court did not reach conclusion regarding triviality of defect, instead concluding the city had no notice of the defect].) Several of the cases upon which *Huckey* relied cited to *Whiting*. In *Whiting*, the Supreme Court referenced its *Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361 (*Nicholson*) decision before concluding that a height differential of three-quarters of an inch was trivial. (*Whiting*, at p. 166.)

In *Nicholson,* there was a break in the concrete surface of the sidewalk at the joints between the panels with a difference in the grade at the break of no more than one and one-half inches, and it was not conspicuous from where the plaintiff accessed the sidewalk. (*Nicholson*, *supra*, 5 Cal.2d at p. 364.) However, the Supreme Court did not draw a conclusion as to whether the defect was trivial, instead only assuming as much to discuss the conspicuousness of the defect for the purpose of determining whether the city had notice. (*Id.* at pp. 365-366; see *Ness v. City of San Diego* (1956) 144 Cal.App.2d 668, 671 (*Ness*) [explaining reversal in *Nicholson* based on lack of

15

notice "of a dangerous condition which was assumed for the purpose of deciding that there was no notice, and is only relevant here for the value in the assumption"].)

Our review of case law did not uncover any cases in which a height differential of one and one-half inches was deemed trivial as a matter of law, and neither party cites to a case in which there are such facts. Case law more recent than those cases cited in *Huckey* that finds defects trivial does not address height differentials that reach one and one-half inches. (See *Cadam v. Somerset Gardens Townhouse HOA* (2011) 200 Cal.App.4th 383, 385-386 [trivial height difference of between three-fourths and seven-eighths of an inch]; *Caloroso, supra,* 122 Cal.App.4th at pp. 925-926 [trivial defect found where there was elevation of between seven-sixteenths of an inch and one inch]; *Ursino, supra,* 192 Cal.App.3d at p. 394 [three-quarters of an inch trivial]; *Fielder, supra,* 71 Cal.App.3d at p. 721 [trivial defect found where there was depression in sidewalk of three-quarters of an inch at the deepest point];[2] *Ness, supra,* 144 Cal.App.2d at p. 673 [trivial defect where height differential was seven-eighths of an inch].)

There are also a few cases where the height differential was close to or reached one-and-one-half inches, and where courts did not find the defects to be trivial as a matter of law. For example, where the height differential of

---

[2] The court in *Fielder* noted that "when the size of the depression begins to stretch beyond one inch the courts have been reluctant to find that the defect is not dangerous as a matter of law." (*Fielder, supra,* 71 Cal.App.3d at p. 726.) In *Rodriguez v. City of Los Angeles* (1963) 215 Cal.App.2d 463, the sidewalk slabs had a height differential ranging from "one-half inch to approximately one inch higher than the other," which created an obstruction that led to at least five accidents at the location, and the court concluded the defect was not minor as a matter of law. (*Id.* at pp. 467-468.)

16

between one and one-sixteenth and one and three-quarter inches and located in a cross walk, the court concluded reasonable minds might differ as to whether it could be characterized as dangerous. (*Johnson v. City of San Leandro* (1960) 179 Cal.App.2d 794, 800.) In *Gentekos*, there was in the middle of the sidewalk a broken piece with jagged and broken edges that "projected at least an inch and a quarter abruptly above the surrounding area." (*Gentekos, supra,* 163 Cal.App.2d at p. 700.) And in *Sheldon v. City of Los Angeles* (1942) 55 Cal.App.2d 690, the difference in elevation rose to a high point of one and one-half of one inch, and the court concluded the defect was not trivial as a matter of law. (*Id.* at pp. 692-693.)

We also recognize, as did the trial court, that "whether the defect is dangerous as a matter of law does not rest solely on the size of the crack in the walkway, since a tape measure alone cannot be used to determine whether the defect was trivial." (*Caloroso, supra,* 122 Cal.App.4th at p. 927.) Courts must also consider the surrounding circumstances (Gov. Code, § 830.2; *Fielder, supra,* 71 Cal.App.3d at p. 734), including "whether the walkway had any broken pieces or jagged edges and other conditions of the walkway surrounding the defect, such as whether there was debris, grease or water concealing the defect, as well as whether the accident occurred at night in an unlighted area or some other condition obstructed a pedestrian's view of the defect." (*Caloroso,* at p. 927*;* see also *Fielder,* at p. 734.) Other circumstances the court should consider include the shape and configuration of the defect, "and any other conditions surrounding the defect." (*Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 267-268.)

Although the trial court here sustained objections to the expert's declaration, it nonetheless considered the defect as reaching one-and-one-half inches in height differential. Looking at the photographs and other evidence,

and viewing the information in a light most favorable to Liss, we likewise treat the height differential as reaching up to one and one-half inches for purposes of summary judgment. This size defect does not fall squarely among those determined to be trivial as a matter of law.

We view some of the possible aggravating circumstances differently than the trial court did. Certainly, many possible factors were not at play here: the incident occurred around 9:30 in the morning; there is no information suggesting the water meter box was shaded, unlit, or otherwise obscured from Liss's view, and there was no debris present. Thus, obstruction of the water meter box does not appear to have played a part in the incident. Additionally, there were no known, reported previous falls connected with that water meter box; neither Liss nor Karelis were aware of any, and none had been reported to the City through any of the various departments that collected the data.

However, the photographic evidence shows crumbled and broken concrete on the sidewalk surrounding and next to the water meter, including around the water meter cover itself. This suggests some amount of instability in the sidewalk surrounding the water box. And while the City argued the presence of a vehicle backing out of the driveway in front of which the water meter box is located is not an appropriate circumstance to consider, the placement of the water meter box on the sidewalk in the lip of the residence driveway is a factor specific to the condition's location that we can and do consider.

We understand the City's position that distractions are always possible, and that it is the pedestrian's responsibility to act with due care. (See Gov. Code, § 830, subd. (a).) But the case law which the City cites addresses a different kind of distraction than what we observe here. In *Mixon v. Pacific*

18

*Gas & Electric Company* (2012) 207 Cal.App.4th 124, 136, the court concluded that an accurate, reasonably-placed warning sign does not create a danger just because it focuses a driver's attention on one pending roadway feature among many because drivers must attend to the roadway as a whole. And in *Lompoc Unified School District v. Superior Court* (1993) 20 Cal.App.4th 1688, 1697, the court concluded the school district did not have a duty to users of an adjacent street to shroud the athletic fields so passing motorists could avoid distraction.

Here, the distraction of the moving vehicle in the driveway did not alert Liss to possible upcoming danger like the caution sign did in *Mixon*. Nor was Liss distracted by an event unrelated to her exercise activity, like the drivers in *Lompoc*. Instead, Liss's attention on the vehicle in the driveway highlights the relevance of the water meter box's location, not simply in a sidewalk slab, but in a slab at the foot of a driveway where vehicles enter and exit. Its location has relevance here *because* of the pedestrian's duty to exercise due care.

Given the height of the differential, the broken concrete surrounding it, its placement at the base of a driveway where vehicle activity is foreseeable, and the presence of a moving vehicle in the driveway, and resolving all evidentiary doubts and ambiguities in Liss's favor, we cannot say that reasonable minds could reach only the conclusion that the defect here was trivial. This is a determination for the jury to make.

### D. Notice

A public entity can be liable for a dangerous condition it did not create if it had actual or constructive notice of the defect before injury, and it had

19

sufficient time to correct it.[3]  (Gov. Code, § 835.)  Actual notice exists if the public entity knows of the condition and knows or should have known of the condition's dangerous character.  (Gov. Code, § 835.2, subd. (a).)

A public entity has constructive notice of a dangerous condition if the condition exists long enough and is obvious enough that, in the exercise of due care, the entity should have discovered the condition's dangerous character.  (Gov. Code, § 835.2, subd. (b).)  Constructive notice also exists if the hazard would have been discovered by a reasonable inspection, but the public entity failed to have such a system in place or failed to operate its inspection system with due care.  (Gov. Code, § 835.2, subd. (b)(2); see *Straughter v. State of California* (1976) 89 Cal.App.3d 102, 110-111 (*Straughter*) [constructive notice based on failure to inspect].) " '[Constructive] notice may be imputed if it can be shown that an obvious danger existed for an adequate period of time before the accident to have permitted the [public entity], in the exercise of due care, to discover and remedy the situation . . . .' [Citation.]"  (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 842.)  Typically, "[t]he questions of whether a dangerous condition could have been discovered by reasonable inspection and whether there was adequate time for preventive measures are properly left to the jury."  (*Id.* at p. 843; *Rowland v. City of Pomona* (1947) 82 Cal.App.2d 622, 626 [whether a defective and dangerous condition existed for a sufficient length of time to constitute constructive notice, and whether a reasonable time to remedy the condition or to take action to protect the public against the condition existed are questions for the trier of fact to determine].)

_____

3      The City raised both actual and constructive notice in its motion for summary judgment.

The City maintains that it did not have actual notice because "it received no report, complaint, service request, claim, or other notification of any kind concerning the subject location or its allegedly dangerous character, prior to Liss's fall." It also argues that no problems were noted during the sidewalk inspection in January 2015, three years before Liss's fall. It contends that because it made a prima facie showing that it did not receive actual notice, Liss bears the burden of presenting evidence of a triable issue of material fact, and that she fails to do so because her only argument is that a City employee read the water meter two weeks before the incident, and there had been no significant change to the water meter box's condition between that time and the incident. The City alleges that the only evidence to support this contention is Liss's citation to Moore's (inadmissible) opinion. The City's position regarding notice, then, relies on whether there is evidence that a person visited the site to read the meter in the weeks or months prior to Liss's fall and therefore "should have known of the dangerous condition." (See Gov. Code, § 835.2, subd. (b).)

In response to Liss's Special Interrogatory No. 2, which asked the City to describe its inspection system for discovering any potentially dangerous conditions during the 12 months preceding Liss's fall, the City wrote: "Every two months, water meters are read by Public Utilities employees to determine the amount of water passing through the meter and for billing purposes. These employees can report problem conditions they observe with the meter, box, and lid." The response implies that public employees visit the

21

site when reading meters; otherwise, they would not be able to observe any problem conditions with the meter, box, or lid to report to the City.[4]

The attorney for the City argued the presence of a meter reader in person was "not really the issue," because there was "no evidence that the meter reader was aware—should have been aware of the dangerous condition." However, the City's response to the interrogatory indicated its policy was for some sort of inspection of water meter boxes to occur every couple months, at which time employees could report any problems. Thus, if the hazard would have been discovered by a reasonable inspection as part of this process, but the City failed to operate its inspection process with due care, it could still be found to have constructive notice of a defect. (Gov. Code, § 835.2, subd. (b)(2); see *Straughter, supra*, 89 Cal.App.3d at pp. 110-111 [constructive notice based on failure to inspect].)

The City's representation that there is no evidence that the meter reader should have been aware of a dangerous condition cuts both ways; there is also no evidence that the meter reader was not aware of it. The City's argument is that the water meters are read every two months and the meter readers can report problem conditions, but if there is not actually a meter reader present and reading this meter, then that does not ring true. The City, which possesses access to such information, presented no evidence on this point at all whatsoever.

During the hearing, the court commented that smart meters had been installed in La Jolla, though no parties had submitted evidence related to

[4]    The City acknowledged during the hearing that the policy was for meter readers to enter a trouble code when observing an issue during an in-person meter reading, and the attorney for the City told the court there are trouble codes for sunken water meter lids, so that if a reader were on site and discerned the lid were so sunken that it needed to be reported, he or she could do so.

this possibility.  In its judgment, the trial court explained that "[m]odern 'smart meters' do not always require periodic examination by 'meter readers.' "  Aside from this reference and the corresponding verbal exchange at the hearing on this point, we find no evidence in the record regarding smart readers, how they function, or whether the water meter at issue in this case was, in fact, a "smart meter."  The City does not provide evidence or represent that the meter box at issue is a "smart meter," and when the court asked defense counsel whether there was any evidence that this was or was not a smart meter, the attorney responded, "I don't think you have an indication either way."

It is the City's burden to demonstrate the cause of action is without merit by showing an element cannot be established.  (Code Civ. Proc., § 437c, subd. (c); *Aguilar*, *supra*, 25 Cal.4th at p. 843.)  Given the implication of the response to the special interrogatory, we cannot conclude Liss cannot reasonably obtain evidence to prove this element.  (See *Gaggero*, *supra*, 108 Cal.App.4th at p. 889.)  If an employee had visited the location, that employee is in a position to explain whether the condition seemed dangerous and why or why not.  And if no employee visited the location, that is relevant information as well.  In other words, there remains an open question as to whether the City may have had actual or constructive notice of the subject defect.[5]  (See *Saelzler*, *supra*, 25 Cal.4th at p. 768.)

III

COMPLIANCE WITH COURT RULES

---

[5]     Even if there is an equally probable inference from this interrogatory response that no person attended to the meter in person to conduct the reading because it does not state expressly how the readings are conducted, we do not weigh conflicting inferences.  (*Aguilar*, *supra*, 25 Cal.4th at p. 856; Code Civ. Proc., § 437c, subd. (c).)

Although we conclude the City has not met its burden and will reverse the judgment, we reach this conclusion despite the quality of Liss's briefing and her non-compliance with California Rules of Court.

First, Liss attached to her opening brief a document, which was not accepted or considered by the trial court.[6] A party may attach exhibits to a brief if those documents are already part of the appellate record. (Cal. Rules of Court, rule 8.204(d).) But when the attached documents are not in in the record, we disregard that evidence on appeal. (See *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 546, fn. 1.)

Second, Liss devoted approximately a page of her argument to discussing an unpublished opinion. This was inappropriate because opinions not certified for publication "must not be cited or relied on by a court or party in any other action."[7] (Cal. Rules of Court, rule 8.1115(a).) We did not consider the unpublished opinion in reaching our decision.

Third, California Rules of Court require an appellant to "[s]upport any reference to a matter in the record by citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule

---

[6] The document she attached as "Exhibit D" was not in the record below. It is a document that has at the top the address 1643 Calle de Cinco, then lists the route number, meter number, read date, and meter reader. It is labeled with discovery number CoSD_000028, suggesting it was produced by the City. Because it was not in the record, we do not consider it. (*Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1054-1055 [evidence "not presented in opposition to the motion for summary judgment motion itself is not properly considered by the court in ruling on the motion"].)

[7] Neither of the exceptions to this rule are applicable here because the cited opinion has no bearing on this particular case under doctrines of law of the case, res judicata, or collateral estoppel (Cal. Rules of Court, rule 8.1115(b)(1)), and the case before us does not regard a criminal or disciplinary action (Cal. Rules of Court, rule 8.1115(b)(2)).

8.204(a)(1)(C).) "The appellate court is not required to search the record on its own seeking error. . . . [Any] point raised that lacks citation may, in this court's discretion, be deemed waived." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.) The failure to comply with this rule may result in offending portions of the brief being disregarded. (*Young v. Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1190-1191.)

In her opening brief, Liss cites to the court transcript volume and page number directing us to her underlying memorandum of points and authorities in opposition to the motion for summary judgment, not to any specific evidence. This required us to utilize the references within the memorandum to locate the information in her statement of undisputed facts. That document in turn provided the location of the relevant, supporting evidence, which was located elsewhere in the record. But Liss failed to provide direct citations to the relevant evidence.

Although we decline to treat the issues in this matter as forfeited as a result, we would describe the briefing here, generously, as sloppy. We encourage counsel to pay closer attention to details and to follow the Rules of Court with diligence in the future.

We also caution Liss against raising new arguments in a reply brief. Liss's first argument in her reply brief was that the court improperly concluded the City did not intentionally destroy evidence. Liss did not raise spoliation as an issue in her opening brief. On the basis of this (new) argument, Liss contends that because the water meter box was destroyed when the City repaired it, there must be an inference that the height differential reached one and one-half inches and was not trivial.

Spoliation occurs when a party significantly alters or destroys evidence or fails to preserve evidence for future use in litigation. (*Williams v. Russ*

(2008) 167 Cal.App.4th 1215, 1223.)  When spoliation occurs, the responsible party can be subject to a broad range of punishments (*Ibid.*), including "the evidentiary inference [that] one party has destroyed or rendered unavailable evidence [that] was unfavorable to that party" (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 11-12).  Additionally, "in most cases of purported spoliation[,] the facts should be decided and any appropriate inference should be made by the trier of fact after a full hearing at trial." (*New Albertsons, Inc. v. Superior* Court (2008) 168 Cal.App.4th 1403, 1431.)  But by raising a substantive argument like this for the first time in her reply brief, Liss has forfeited appellate consideration of its application. (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1267.)

DISPOSITION

The judgment is reversed, and this matter is remanded to the trial court for further proceedings.  In the interests of justice, each party shall bear its own costs on appeal.


                                                    HUFFMAN, Acting P. J.

WE CONCUR:



HALLER, J.



AARON, J.

26